Paul W. **BEATTIE**

v.

Lucille T. **BEATTIE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 23, 1994.

Decided Dec. 9, 1994.

Michael P. Harman, Millinocket, for plaintiff.

Peter A. Anderson, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

RUDMAN, Justice.

Paul Beattie (Paul) appeals from a divorce judgment entered in the Superior Court (Penobscot County, *MacInnes, A.R.J.*) contending that the alimony and spousal support awarded Lucille Beattie (Lucille) are excessive, and the division of the parties' marital property inequitable. We agree with Paul and vacate the judgment.

We review a trial court's findings of fact only for clear error, and will not disturb an alimony award or property division unless it violates a positive rule of law or reaches a plainly and unmistakably unjust result. *Harding v. Murray,* 623 A.2d 172, 175 (Me. 1993) (quoting *Terison v. Terison,* 600 A.2d 1123, 1124 (Me.1992) and citing *Deditch v. Deditch,* 584 A.2d 649, 651 (Me.1990)).

The record reflects the following facts: Paul and Lucille were married throughout Paul's twenty-two years of service in the Air Force. Since leaving the Air Force, Paul has earned a master's degree in business administration and has worked for the Automobile Association of America, as a substitute teacher, and most recently as a town manager, first in Van Buren, then in Fort Fairfield and then in Patten. As town manager in Patten, Paul earned a gross salary of $27,000 in 1992. His net income from that position is $1602 per month.

When the couple married, Lucille had graduated from college with a B.A. in psychology. Throughout the marriage, she worked as a substitute teacher and teacher's aide, but primarily as a homemaker. In 1985, after receiving certification, she began working as a special education teacher. She worked first in Fort Fairfield, where Paul was then employed as a town manager, and left that job when Paul obtained his job in Patten. Lucille found a job as a special education teacher in Patten, and worked there from 1992 until June 1993 (her job terminated the day of the divorce hearing). As a special education teacher, she earned a gross income of $22,300 in 1992.

The court deemed Paul's military pension to be marital property and ordered Paul to arrange for Lucille to receive half of the net monthly amount ($1,847.12) directly from the Air Force. The court also ordered Paul to pay $1000 per month as alimony. The court found the real estate conveyed to Lucille by her father to be Lucille's non-marital property, but ordered Paul to pay the two debts secured by mortgages on the property. It found both vehicles owned by the parties to be marital property, set one aside as Lucille's sole property, but Paul was ordered to make the payments due on a loan secured by the car and set the other aside to Paul subject to any outstanding debt. The court ordered Paul to keep his life insurance policy intact and to name Lucille as the beneficiary. The court assigned to Paul substantially all of the parties debts and at Lucille's request labelled them as additional spousal support.

The financial picture the parties presented to the court was confusing and contradictory. The parties spoke interchangeably of net and gross income, and used $56,000 as the figure representing Paul's gross income. This figure, which found its way into the court's findings of facts, is grossly misleading once $11,082, representing Lucille's annual share of the pension, is subtracted from it. A gross income of $56,000 may or may not be able to satisfy the judgment as entered. Paul's real income cannot. The assignment of the known debts alone requires Paul to pay approximately $2200 per month from an income of $2525 per month ($1602 from his salary and $923.56 from his half of the pension). This minimum does not include the debts the parties designated as "unknown," boat payments, the life insurance obligations, or the alimony. Even without these obligations, it becomes clear that the judgment

imposed on Paul a burden his income cannot accommodate. When alimony alone is included, his debt obligation is closer to $3200 per month. Meanwhile, the judgment provided Lucille an income of approximately $1900 per month ($923.56 from her half of the pension and $1000 per month in alimony) and a debt burden of $80 per month.

■■■ While a court need not divide property and income equally, it must do so equitably. *Robinson v. Robinson,* 554 A.2d 1173, 1176 (Me.1989). The assignment of marital debt is subject to the same considerations of equity as the division of marital property and the award of alimony. *Harding v. Murray,* 623 A.2d 172, 175 (Me.1993). The trial court gave due consideration to 19 M.R.S.A. § 721 [1]. The findings of fact reflect that the court gave consideration to the length of the marriage, the parties' income and employment history and potential, Lucille's contributions both as homemaker and to Paul's education and earning potential, and Paul's economic misconduct. The problem is that while the assignment of debt or the award of alimony may be supportable independently, the evidence does not support the cumulative effect of the judgment. Paul's post-Air Force income history and potential is not so much greater than Lucille's as to justify a judgment that essentially considers him the only party able to support the parties and pay the debt obligations. Nor does the evidence of his improvident spending justify the assignment of the overwhelming bulk of the marital debt to him.

Paul had income from his pension and his employment as a town manager. Lucille was, as of the day of her testimony, unemployed. Paul's career had governed the parties' moves and had some impact on Lucille's professional stability. _She worked primarily as a homemaker and did not pursue a full-time career outside the home. While she clearly has a marketable skill, the trial court heard evidence that could suggest her employment situation was more precarious than Paul's. Paul's professional stability and earning capacity should not be overstated, however. Since leaving the Air Force in 1988, he has held at least five positions, one a town manager position lasting only six weeks. When both were working, the disparity in their incomes was not enormous— Paul earned approximately $27,000, Lucille approximately $22,300.

The strongest evidence of Paul's spending over Lucille's objection related to the purchase of the boat. From the evidence, the court could find that Lucille did not want to buy the boat, that she did not sign the documents associated with the purchase, although her signature appears on them, and that the purchase had a negative effect on the parties' credit. The court could find that this purchase represented a dissipation by one party, Paul, of marital assets and income, over Lucille's objections, and that the debt should be assigned to him.

There are two mortgages encumbering title to the house conveyed to Lucille by her father in 1989. Lucille's father conveyed the property to Lucille alone subject to a debt assumed by both Lucille and Paul. Lucille's father continued to live in the house, and he testified that he made the payments due on

---

1.  19 M.R.S.A. § 721 reads in pertinent part:

    **1. Factors.** The court shall consider the following factors when determining an award of alimony:

    A.  The length of the marriage;
    B.  The ability of each party to pay;
    C.  The age of each party;
    D.  The employment history and employment potential of each party;
    E.  The income history and income potential of each party;
    F.  The education and training of each party;
    G.  The provisions for retirement and health insurance benefits of each party;
    H.  The tax consequences of the division of marital property, including the tax conse-

    quences of the sale of the marital home, if applicable;
    I.  The health and disabilities of each party;
    J.  The tax consequences of an alimony award;
    K.  The contributions of either party as homemaker;
    L.  The contributions of either party to the education or earning potential of the other party;
    M.  Economic misconduct by either party resulting in the diminution of marital property or income;
    N.  The standard of living of the parties during the marriage; and
    O.  Any other factors the court considers appropriate.

the debt even after it was assumed by Paul and Lucille. Lucille testified that this was pursuant to an "informal agreement" between the parties. The judgment ordered Paul to make the payments due on this mortgage debt. While the court could find that the second mortgage was used for the benefit of both parties, specifically for the purchase of a truck and the creation of a certificate of deposit for Lucille and their children, the assignment of the entirety of both mortgage obligations is not justified by the circumstances of this case.

As for the other debts (various credit cards, for the most part), while the trial court had evidence before it to suggest that some of these purchases benefitted Paul more than Lucille, and that some appear to have been incurred over her objections, the evidence does not support a finding that she objected to all and benefitted from none.

Because of the confusing presentation by the parties, it is quite understandable that the trial court's findings of fact are not supported by the evidence. In light of the parties present earning capacity and the ability of each to obtain and retain employment, the court's division of the parties' marital property, including their debts and the award of alimony, reaches a plainly and unmistakably unjust result.

Both parties had an obligation to provide the court at the time of the hearing clear and complete evidence of each party's earning capacity and the nature and full extent of their marital debt. The parties' failure to fulfill their obligation contributed to the result which necessitates our vacating the judgment entered and remanding the case for rehearing.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.