Wesley KNIGHT, Jr.

v.

Lisa KNIGHT.

Supreme Judicial Court of Maine.

Submitted on Briefs April 24, 1996.

Decided July 26, 1996.

Peter Bickerman, Augusta, Jack Comart, Pine Tree Legal Assistance Inc., Augusta, for Plaintiff.

Donald T. Massey, Brunswick, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

Plaintiff Wesley Knight appeals from the entry of a judgment in the Superior Court (Knox County, *Alexander, J.*) affirming the judgment of the District Court (Rockland, *Field, J.*) denying him visitation rights with his daughters, Mandy and Missy Knight. Wesley contends that the divorce court exceeded its authority when it denied him visitation and that there was insufficient evidence justifying the denial. He also contends that the court committed an error of law when it imposed a condition on future visitation that a "therapist has certified that the child is both willing and ready for visitation." We modify that portion of the court's judgment making future visitation contingent on the therapist's certification of the children's willingness and readiness to participate in visitation, and otherwise affirm the judgment.

*Background*

Wesley and Lisa Knight were married in November 1990, subsequent to Wesley's arrest for murder. At the time of their marriage, the couple had a six month old daughter, Mandy. The couple had another daughter, Missy, in April 1991. In September 1991, Wesley was tried and convicted of "intentional or knowing" murder. He is currently serving a 45 year prison sentence.

In October 1992 Wesley filed a complaint for a divorce. The court subsequently granted the divorce on the grounds of irreconcilable differences, and disposed of all issues pertaining to the division of marital property and support. The court, however, postponed determination of Wesley's visitation rights until a hearing could be held.

In October 1993 a hearing was held at which Lisa testified on the issue of visitation. She opposed Mandy and Missy's visitation with Wesley until such time as they are old enough to make their own decision about whether or not to visit him in prison. She

further testified that whenever Mandy and Missy *do* express a desire to visit their father, even if they are still very young when they do so, she will not oppose visitation. As of the date of the hearing, neither child had ever expressed a desire to visit Wesley.

After the hearing, the court appointed a guardian ad litem [1] to investigate the family's situation and to make recommendations about visitation. In a report submitted to the court, the guardian found that visitation with Wesley was not in the children's best interest for several reasons: (1) the children were likely to be frightened by visiting their father in prison; (2) the children were too young cognitively to understand why their father is in prison, and his being there would thus cause them confusion; (3) getting to the prison for visits involved a long drive each way; (4) the dynamics between Wesley and Lisa, and the fact that Lisa would supervise any visits at the prison, meant that any visitation was likely to be stressful for the children and Wesley and Lisa, as well as potentially volatile for Wesley; and (5) given Wesley's criminal background and history of intimidating behavior, the potential negative impact on the children of visits outweighed any potential benefit to them. At a subsequent hearing the guardian expanded on these conclusions.

After reviewing the guardian's report and testimony, as well as Lisa's testimony at the first hearing and Wesley's criminal file, the court issued its order denying visitation, stating:

... it is ORDERED that further visitation with each child be extinguished until the child reaches the age of ten, after which visitation may occur if, and only if, the child has under taken [sic] counselling with the Guardian ad Litem or other suitable psychotherapist, and that therapist has certified that the child is both willing and ready for visitation. It is ORDERED that Defendant shall arrange for this counselling and provide Plaintiff with the name and address of that therapist.

The court also specifically ordered that Wesley be allowed to correspond with Mandy and

1. The guardian in this case is a child and adult psychiatrist.

Missy and that he have equal access to records and information pertaining to the children.

In response to Wesley's motion pursuant to M.R.Civ.P. 52 to alter and amend the judgment and a request for findings of fact on the visitation issue, the court held a telephonic hearing and then upheld its earlier decision:

> Plaintiff seeks to have the Order dated 31 January 1994 amended to allow visitation after the minor children have reached the age of six, if certain preconditions have been met. The Court declines to do this. The Guardian ad Litem testified that, as a general rule, a minor child should not be subjected to visitation in a prison setting until such time as she has the ability to comprehend the circumstances of the incarceration and not be afraid of the situation within which visitation takes place. She extended this in the instant case to "school age," which she defined as "first grade." The Court has listened to the testimony of the mother describing the impact of the harsh noise of the steel doors closing upon the older child, however, and read the record of the particularly brutal murder that led to Plaintiff's incarceration, and finds those factors compelling. In this particular case, given the testimony of the Guardian ad Litem, the factors outlined above, and the lack of any meaningful relationship between the children, especially the younger, and the Plaintiff, the Court finds that the children's best interest is to wait until they are older.

Wesley appealed from the District Court's judgment and the Superior Court affirmed. Wesley now appeals from the judgment of the Superior Court.

## Discussion

When the Superior Court acts in an intermediate appellate capacity, as in the instant case, we review the decision of the District Court directly. *Smith v. Welch,* 645 A.2d 1130, 1131 (Me.1994). Issues arising out of a divorce action, such as property division, alimony, custody and child support, are within the court's sound discretion, *Shirley v. Shirley,* 482 A.2d 845, 847 (Me.1984) (citing *Gardner v. Perry,* 405 A.2d 721, 725 (Me.1979)), and the judgment of the court on such matters is entitled to substantial deference. *Id.* at 848 (citing *Cooley v. St. Andre's Child Placing Agency,* 415 A.2d 1084, 1086 (Me.1980)). As long as there is rational or credible evidence in the record supporting the divorce court's decision, the judgment will not be overturned on appeal. *Id.* (citing *Sheldon v. Sheldon,* 423 A.2d 943, 946 (Me. 1980)). Because visitation is an issue incident to a divorce action, we review the court's order denying Wesley visitation for an abuse of discretion or an error of law.

## Age contingency

Wesley first contends that the divorce court abused its discretion in precluding reconsideration of the visitation issue until Mandy and Missy are ten years old. In making this argument, Wesley equates the age contingency in the court's order to a prohibition against seeking relief from the visitation denial prior to the children reaching the designated age. There is no merit to this position. Although the court's order imposes preconditions on a resumption of visitation, it is, like all visitation orders, subject to modification at an earlier date if there is a change in circumstances sufficiently substantial to affect the best interests of the children. *See Ehrlich v. Bloom,* 585 A.2d 809, 812 (Me.1991), *cert. denied,* 502 U.S. 870, 112 S.Ct. 201, 116 L.Ed.2d 161 (1991). In fashioning its visitation order, the court did not preclude Wesley from seeking reconsideration of its visitation decision based on a change in circumstances.

## "Willing and ready" contingency

Wesley next contends that the court abused its discretion by conditioning resumption of visitation on a recommendation by the therapist that the children are "willing and ready" for visitation. He argues that by imposing this condition, the court improperly modified the best interest standard that is applicable to determinations of parental rights and responsibilities. We agree.

Pursuant to statute, a court making an award of parental rights and responsibilities must apply the best interest of the child

standard. 19 M.R.S.A. § 752(5) (Supp.1995). That standard requires the court to consider the following factors:

    A. The age of the child;

    B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;

    C. *The preference of the child, if old enough to express a meaningful preference;*

    D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;

    E. The stability of any proposed living arrangements for the child;

    F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;

    G. The child's adjustment to the child's present home, school and community;

    H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;

    I. The capacity of each parent to cooperate or to learn to cooperate in child care;

    J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;

    K. The effect on the child if one parent has sole authority over the child's upbringing;

    K-1. The existence of domestic abuse between the parents, in the past or currently, and how that abuse affects:

        (1) The child emotionally; and

        (2) The safety of the child;

    K-2. The existence of any history of child abuse by a parent; and

    L. All other factors having a reasonable bearing on the physical and psychological well-being of the child.

*Id.* § 752(5)(A)–(L) (emphasis added).

    ■ Pursuant to this statute, Mandy and Missy's willingness to visit their father is one of many factors that must be considered by the court in determining whether visitation with him is in their best interest. The court, however, gave determinative significance to their preference by making future visitation with their father contingent on their willingness to see him. Although the unusual circumstances of their father's incarceration might justify the court attaching special significance to the preference of the children in fashioning a future visitation order that serves their best interest, the court's elevation of this preference to a determinative factor is a misapplication of a statute that requires the court to assess the children's best interest in light of the numerous factors listed above, including but not limited to their preference.

    ■ The court also erred in making future visitation contingent on the certification of the therapist that the child is ready for visitation. As stated by the court, that contingency transfers the court's responsibility for determining the best interest of the child to the therapist. Although the court can consider the expression of such an expert opinion by a therapist, the court cannot make the visitation outcome dependent upon that opinion.

*Sufficiency of the evidence*

    ■ Finally, Wesley argues that the court abused its discretion in denying him visitation. The court cited the following testimony in denying visitation: (1) the guardian's testimony that minor children generally should not be subjected to visitation in a prison setting until they are old enough to understand the circumstances of the parent's incarceration and not be frightened of the prison setting;[2] (2) Lisa's testimony about the frightening impact of the noise of closing steel doors upon Mandy, the older child; (3) the heinous nature of Wesley's crime;[3] and

---

**2.** The guardian testified that the age at which children might, generally speaking, be able to handle prison visitation is "school age," which she defined as first grade.

**3.** Wesley argues that the court improperly relied on the nature of his crime in making its visitation determination. He points out that the Legislature has not made the nature of a parent's crime an express factor to be considered in the best interest analysis. While that is true, *see* 19 M.R.S.A. § 752(5)(A)–(L) (Supp.1995), a court can consider the nature of a parent's crime pursuant to the "catchall" provision in the statute

(4) the lack of a meaningful relationship between Wesley and his daughters. This evidence provides rational support for the court's denial of visitation.

The entry is:

Judgment modified by deleting from the fourth paragraph of the section entitled "Parental Rights and Responsibilities," "and that therapist has certified that the child is both willing and ready for visitation"; and as modified, affirmed.

All concurring.

---

that allows a court to consider "[a]ll other factors having a reasonable bearing on the physical and psychological well-being of the child." 19 M.R.S.A. § 752(5)(L). Any awareness of the nature of Wesley's crime, "intentional or knowing" murder, might reasonably have a bearing on Mandy and Missy's psychological well-being.