2001 ME 127

**Deborah DARGIE**

v.

**Roger DARGIE.**

Supreme Judicial Court of Maine.

Argued: May 16, 2001.
Decided: July 30, 2001.

Coleman G. Coyne Jr., Esq., (orally), Murphy and Coyne, Lewiston, for plaintiff.

Ronald P. Lebel, Esq., (orally), James E. Belleau, Esq., Skelton, Taintor & Abbott, P.A., Auburn, for defendant.

Panel: WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Roger Dargie appeals from a judgment entered in the Superior Court (Androscoggin County, *Studstrup, J.*), affirming the judgment of the District Court (Lewiston, *Beliveau, J.*), granting a divorce on the grounds of irreconcilable differences. We affirm the judgment.

## I.

[¶ 2] Roger argues that the District Court erred when it failed to make further findings of fact pursuant to his request. A party may, pursuant to M.R. Civ. P. 52(b), request a court to "amend its findings or make additional findings." The trial court " 'has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review.' " *Sewall v. Saritvanich,* 1999 ME 46, ¶ 9, 726 A.2d 224, 225 (quoting *Peters v. Peters,* 1997 ME 134, ¶ 10, 697 A.2d 1254, 1258). "If the judgment does not set forth adequate findings on the contested issues and the court does not make the requested findings pursuant to M.R. Civ. P. 52, intelligent appellate review is impossible and the denial of a motion for further findings of fact constitutes an abuse of discretion." *Id.* (citing *Peters,* 1997 ME 134, ¶ 11, 697 A.2d at 1258).

[¶ 3] The District Court's Judgment is thirty-five (35) pages long. Of those thirty-five pages, nineteen (19) are devoted to findings of fact. Roger correctly asserts that he is entitled to findings of fact sufficient to allow for appellate review. What Roger seeks, however, is not further findings of fact, but the rationale used by the District Court to reach the conclusions that it reached; that he is not entitled to. The District Court made sufficient findings of fact such that intelligent appellate review is not precluded in this case.

## II.

[¶ 4] Roger argues that the trial court erred in its division of the marital assets. When the Superior Court acts as an intermediate appellate court, we review the decision of the District Court directly. *Kapler v. Kapler,* 2000 ME 131, ¶ 6, 755 A.2d 502, 506 (citation omitted). "We review the division of marital property for an abuse of discretion." *Long v. Long,* 1997 ME 171, ¶ 19, 697 A.2d 1317, 1324 (citing *Arey v. Arey,* 651 A.2d 351, 353 (Me.1994)). The District Court's division of marital property will be vacated only if there is a "violation of some positive rule of law or if the division results in a 'plain and unmistakable injustice, so apparent that it is instantly visible without argument.' " *Doucette v. Washburn,* 2001 ME 38, ¶ 23, 766 A.2d 578, 586 (quoting *Pederson v. Pederson,* 644 A.2d 1045, 1046 (Me.1994) (citations omitted)).

[¶ 5] The District Court's authority with respect to the distribution of marital property is governed by 19–A M.R.S.A. § 953 (1998).[1] A divorce court is not re-

---

1. Section 953 states, in relevant part:

    **1. Disposition.** In a proceeding for a divorce.... the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the

quired to divide marital property equally, but rather, "is required to make the division fair and just considering all of the circumstances of the parties." *Doucette,* 2001 ME 38, ¶ 24, 766 A.2d at 586 (citations omitted).

[¶ 6] During the course of the marriage, the parties accumulated numerous articles of personal property and acquired title to one parcel of real estate. Roger challenges the court's distribution of four items of marital property: (1) the $150,000 in life insurance proceeds received by Deborah on the death of her father, (2) Roger's interest in Safe Approach, Inc., a company in which he is a 50% owner, (3) the parties' Taywood Road residential property, and (4) a Century cabin cruiser and boat-slip. The District Court awarded Deborah both the insurance proceeds and the Taywood Road real estate. The court awarded Roger the boat and boat-slip, and his interest in Safe Approach, Inc., subject to a payment of $56,000 to Deborah.

### A. The proceeds of the life insurance policy.

■ [¶ 7] Deborah was the beneficiary of a term life insurance policy on her father's life. Roger contests the court's award of the life insurance proceeds to Deborah. At the time of the hearing, Deborah was employed by Professional Graphics, a business owned by her now-deceased father. Evidence was introduced showing

that Deborah's father increased Deborah's weekly compensation to aid her in the payment of the term life insurance premium.

[¶ 8] In justifying its award of the full $150,000 to Deborah, the court succinctly stated that

[t]here is ... no question in this court's mind that the proceeds of this insurance policy although marital are hereby awarded to [Deborah]. She is entitled to all the proceeds because the facts support this position. The father intended to benefit his daughter by providing her with the insurance policy and placed it in her name. The father's estate plan took this into consideration. The plaintiff will not receive a special bequest upon the death of her mother. However, her siblings are entitled to a $100,000 bequest. It is obvious to the court without further comment that the "intention" of the plaintiff's father and his company was to provide for plaintiff separate from the other children because of her involvement over the years with Professional Graphics, Inc.[,] her father's business.

[¶ 9] The District Court determined that the insurance proceeds were marital property, and then, based on the unique and special facts of this case, properly awarded the proceeds to Deborah. We cannot say that awarding Deborah the life insurance

court considers just after considering all relevant factors, including:

**A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

**B.** The value of the property set apart to each spouse; and

**C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable

periods to the spouse having custody of the children.

. . . .

**3. Acquired subsequent to marriage.** All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership. . . .

. . . .

19–A M.R.S.A. § 953(1) & (3) (1998 & Supp. 2000).

proceeds "results in a 'plain and unmistakable injustice, so apparent that it is instantly visible without argument.'" *Doucette*, 2001 ME 38, ¶ 23, 766 A.2d at 586 (quoting *Pederson*, 644 A.2d at 1046).

B.  The parties' home.

[¶ 10] The parties jointly own a home located on the Taywood Road in Auburn, which they stipulated is valued at $118,000. There is a first mortgage on the home, held by Androscoggin Savings Bank, with a balance of approximately $51,000. The court awarded Deborah the home, where she lives with the parties' daughter, subject to a mortgage debt for which Deborah is responsible.

[¶ 11] Awarding Deborah the Taywood Road home does not "result[ ] in a 'plain and unmistakable injustice, so apparent that it is instantly visible without argument.'" *Id.*

C.  Safe Approach, Inc., and Roger's boat.

■ [¶ 12] The court awarded to Roger his interest in Safe Approach, Inc. In determining the value of the company, the District Court heard testimony from two expert witnesses. Based on that testimony, the court concluded that the fair market value of Roger's 50% interest in Safe Approach, Inc. was $112,000. The District Court, in determining Safe Approach's market value, noted that its valuation, "is ... conservative considering all of the ... options...." We will not substitute our judgment for it on that issue. *See Kapler*, 2000 ME 131, ¶ 9, 755 A.2d at 507.

[¶ 13] The court determined that Roger's interest in Safe Approach was marital property. It awarded that interest to Roger and ordered him to pay one-half of the value attributed to that interest in the company to Deborah. The court also assigned Roger the responsibility for repayment of the debt secured by the second mortgage on the Taywood Road real estate. Roger borrowed this money in 1994 and, subsequently, loaned it to Safe Approach. Safe Approach has been amortizing the debt.

[¶ 14] The parties requested that the court award Roger the boat and boat-slip. The court subsequently awarded Roger the parties' Century cabin cruiser and the boat-slip at the Jordan Bay Marina.

[¶ 15] When making its property award, the District Court noted that

the court is convinced that an equal division of marital assets would not be equitable or just under the circumstance of this case. There is no question that the plaintiff's insurance proceeds should not be divided equally or fractionally but should be awarded entirely to the plaintiff. Also the court has considered in detail the value of the defendant's interest in Safe Approach, Inc[.] and considers its conclusion of value as the more conservative considering all of the other options ....

[¶ 16] We again emphasize the general rule that a divorce court is not required to make an equal distribution of marital property; rather, it is required to make the division "fair and just considering all of the circumstances of the parties." *Doucette*, 2001 ME 38, ¶ 24, 766 A.2d at 586 (citation omitted). It is clear to us that the District Court properly considered all of the circumstances of the parties. Therefore, we cannot conclude that the court exceeded the bounds of its discretion when dividing the marital assets and debts. *See Long*, 1997 ME 171, ¶ 19, 697 A.2d at 1324 (citation omitted).

III.

[¶ 17] Roger also contends that the trial court erred in: (1) finding that Deborah's income is $27,000 per year, (2) finding that

Roger's income is $65,000, and (3) calculating spousal and child support.

A. The parties' income.

[¶ 18] The court's determination of the parties' income is a finding of fact that we review pursuant to the clearly erroneous standard. *Ramsdell v. Ramsdell,* 1997 ME 14, ¶ 5, 688 A.2d 918, 921 (citing *Quin v. Quinn,* 641 A.2d 180, 181 (Me.1994)). Deborah's testimony, and her M.R. Civ. P. 80(C) financial statement, shows that, at the time of the hearing, she was earning $500 per week plus fringe benefits. In light of the less-than-exact evidence, we cannot say that the trial court was clearly erroneous in its determination of Deborah's income.

[¶ 19] Roger also asserts that the court erred in not imputing additional income to Deborah for (1) income that she may earn as a result of Roger's payment to her for her marital interest in Safe Approach, Inc., and (2) her receipt of the life insurance proceeds. Contrary to Roger's contentions, the District Court did not err in refusing to impute additional income to Deborah. To impute such income would be purely speculative. Deborah's only source of earnings at the time of the divorce hearing was derived from her employment by Professional Graphics.

[¶ 20] Roger also challenges the District Court's finding that his income is approximately $65,000 per year. To assist the court in its determinations, Roger had an obligation to provide the court with clear and complete evidence of his earning capacity. *Beattie v. Beattie,* 650 A.2d 950, 953 (Me.1994). Roger is a fifty-percent (50%) owner of Safe Approach. He receives a base salary of $1,000 per week and employment benefits that include the free use of a 1998 Ford Expedition, health insurance benefits, vacation pay, and a liberal expense account. Roger

is also the owner of two patents, the Hatch Net 120 and Hatch Net 121. Prior to the divorce hearing, he received royalties from Safe Approach for its use of the patents through 1998. Although Roger no longer receives royalties on account of his patents, Safe Approach continues to benefit from the use of his patents.

[¶ 21] Roger's income from the Hatch Net royalties has steadily increased over the years, with Roger receiving $8,957 in royalties from Safe Approach in 1998. Roger's 1998 tax return also shows that he received a $10,000 bonus from Safe Approach. Roger testified, however, that he has received only one bonus from Safe Approach during the history of the company. In total, Roger's 1998 adjusted gross income was $72,550.

[¶ 22] Based on the evidence presented at trial and the parties' financial affidavits, the trial court did not commit a clear error in determining that Roger's income was "in the vicinity of approximately $65,000." *See Ramsdell,* 1997 ME 14, ¶ 5, 688 A.2d at 921 (citing *Quin,* 641 A.2d at 181).

B. Child and spousal support.

[¶ 23] Roger argues that the District Court erred in calculating child and spousal support. We review child support determinations for an abuse of discretion. *Robinson v. Robinson,* 2000 ME 101, ¶ 13, 751 A.2d 457, 460 (quoting *Knight v. Knight,* 680 A.2d 1035, 1037 (Me.1996)). The trial court's judgment in such matters is entitled to "substantial deference." *Id.*

[¶ 24] We are cognizant that, in the normal course of calculating child support, the District Court will look at, and consider, all income, including income from investments and employment. We cannot speculate what interest or principal Deborah will receive from Roger in satisfaction of the

court's order to pay her $56,000, or how Deborah will use principal payments from Roger or the insurance proceeds. Conceivably, Deborah might use the insurance proceeds to satisfy all her outstanding debt. In this scenario there would be no additional income to impute to Deborah.

[¶ 25] In the event that there is a substantial change in either parties' income in the future, either party may seek to modify the child support award at that time.[2] *See* 19–A M.R.S.A. § 2009. The District Court did not err in declining to include potential income in its calculation of Deborah's income.

■■■ [¶ 26] Roger also argues that the District Court "abused its discretion and erred as a matter of law when it refused to consider all sources of income for Deborah when awarding" spousal support. We note that the trial court's judgment specifically stated that "the court has considered all the factors contained in T19–A M.R.S.A.

[sic] § 721(1)(A–O)." Only in those instances where the District Court " 'has violated some positive rule of law or has reached a result which is plainly and unmistakenly an injustice that is so apparent as to be instantly visible without argument' " will we vacate the District Court's spousal support award. *Sorey v. Sorey*, 1998 ME 217, ¶ 8, 718 A.2d 568, 570 (quoting *Ramsdell v. Ramsdell*, 1997 ME 14, ¶ 5, 688 A.2d 918, 920–21).

[¶ 27] The District Court's authority with respect to spousal support determinations was governed by 19–A M.R.S.A. § 951,[3] the statute then in effect.[4] The factors enumerated in 19–A M.R.S.A. § 951 gave the District Court broad discretion when awarding spousal support. *Id.* at ¶ 11, 688 A.2d 918 718 A.2d at 570.

[¶ 28] Relying on *Eastman v. Eastman–Veres*, 1997 ME 26, 690 A.2d 494, Roger argues that the court erred in not considering Deborah's various sources of potential interest income when making its

---

**2.** We note that, given the facts of this case, Roger could have requested a deviation from the child support guidelines but apparently chose not to do so. *See* 19–A M.R.S.A. § 2007(3)(E) (1998) (providing that "criteria that may justify deviation from the support guidelines [include] ... [t]he financial resources and needs of a party, including nonrecurring income not included in the definition of *gross income* ....").

**3.** 19–A M.R.S.A. § 951 states in relevant part:
§ 951. **Spousal support**
    **1. Factors.** The court shall consider the following factors when determining an award of spousal support:
    A.  The length of the marriage;
    B.  The ability of each party to pay;
    C.  The age of each party;
    D.  The employment history and employment potential of each party;
    E.  The income history and income potential of each party;
    F.  The education and training of each party;
    G.  The provisions for retirement and health insurance benefits of each party;

H.  The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
I.  The health and disabilities of each party;
J.  The tax consequences of a spousal support award;
K.  The contributions of either party as homemaker;
L.  The contributions of either party to the education or earning potential of the other party;
M.  Economic misconduct by either party resulting in the diminution of marital property or income;
N.  The standard of living of the parties during the marriage; and
O.  Any other factors the court considers appropriate.
    ....
    19–A  M.R.S.A. § 951(1) (1998).

**4.** By operation of P.L.1999, ch. 634, § 2, 19–A M.R.S.A. § 951 has been repealed and replaced by 19–A M.R.S.A. § 951–A.

spousal support award. In *Eastman*, the trial court properly included the former husband and his current wife's interest income when determining alimony. This case is, however, distinguishable from *Eastman*. In *Eastman*, the parties were *actually receiving* interest income; in this case, Deborah is not currently receiving interest income.

[¶ 29] A review of the factors listed in 19–A M.R.S.A. § 951 supports the District Court's spousal support award. Roger's projected income appears, at a minimum, to be at least twice that of Deborah's. In addition to his base salary of $52,000 per year, the trial court found that Roger receives substantial benefits from his company, including the free use of a vehicle and a very liberal expense account, which reimburses him for meals, entertainment, and travel expenses when he is "on the road" or "entertaining" clients. We conclude, therefore, that the District Court did not err in awarding Deborah $150 per week in spousal support.

### IV.

[¶ 30] Finally, Roger argues that the court exceeded the bounds of its discretion in ordering him to pay a portion of Deborah's attorney fees. "When making a final decree, the court may order a party to pay reasonable attorney's fees. . . ." 19–A M.R.S.A. § 952(3) (1998). The determination of whether to award attorney fees lies within the sound discretion of the trial judge. *Largay v. Largay*, 2000 ME 108, ¶ 16, 752 A.2d 194, 198. We review the trial court's award of attorney fees for an abuse of discretion. *Id.* (citation omitted).

[¶ 31] "An award of attorney fees should 'be based on the parties' relative capacity to absorb the costs of litigation' . . . and all relevant factors that serve to create an award that is 'fair and just under the circumstances.' " *Id.* (quoting *Clum v. Graves*, 1999 ME 77, ¶ 17, 729 A.2d 900, 907) (emphasis omitted).

[¶ 32] Roger's income, plus liberal fringe benefits, is nearly twice that of Deborah's.[5] In light of the facts of this case, the District Court did not exceed the bounds of its discretion in obligating Roger to pay a portion of Deborah's attorney fees.

[¶ 33] Rogers other contentions are meritless and will not be addressed.

The entry is:

Judgment affirmed.

DANA, J., dissenting.

[¶ 34] I must respectfully dissent.

[¶ 35] In its distribution of the marital property, it is not clear that the court considered the extent of the debt it ordered Roger to pay. When that debt is considered, the magnitude of the allocation to Deborah is revealed. Although the court was aware that its allocation was disproportionate and although it provided a rationale for a disproportionate allocation, because of the manner of its presentation, we and the parties are left to speculate as to whether the court fully understood the ramifications of its order. My colleagues give the trial court the benefit of the doubt. We should not have to guess. Finally, in its award of child and spousal support and attorney fees, the court appeared to consider only the parties' salaries and failed to consider their relative net worths or other income.

---

5.  We note that, at the time of the divorce hearing, Roger had the free use of a company vehicle, a 1998 Ford Expedition. Deborah was responsible for making a monthly lease payment of approximately $400 per month for her vehicle.

## I. PRESENTATION

[¶ 36] Although the trial court's thirty-five page opinion is extensive, it is not clear that it appreciated that it awarded Deborah approximately 85% of the marital net worth. Even if the life insurance proceeds are excluded, Deborah received over 70% of the remaining marital net worth. It would be helpful to the parties and to us in performing our appellate function if trial courts would set forth in table form the marital and non-marital assets awarded and the debts assigned to each party in a manner such as the following:

### DISTRIBUTION OF NON–MARITAL ASSET TO DEBORAH

| | | |
|---|---|---|
| Eight shares in stock of family business | 3,000 [6] | 3,000 |

### DISTRIBUTION OF MARITAL ASSETS AND MARITAL DEBTS TO DEBORAH [7]

| | Asset Value | Debt Owed | Net Asset Value |
|---|---|---|---|
| Real estate | 118,000 | (52,000) | 66,000 |
| Value of Deborah's interest in Roger's business (note @ 7%) | 56,000 | | 56,000 |
| Life insurance proceeds | 150,000 | | 150,000 |
| Lease of 1998 Ford Explorer | ? [8] | | ? |
| Jewelry | 2,500 | | 2,500 |
| Home furnishings | 7,000 | | 7,000 |
| Savings Bank account nos. 1 & 2 | *1,708* | | 1,708 |
| IRA account | 6,800 | | 6,800 |
| 35 mm camera and video cameras | *1,200* | | 1,200 |
| Discover credit card debt | | *(1,835)* | (1,835) |

| | | |
|---|---|---|
| TOTAL MARITAL NET WORTH | | 289,373 |

### DISTRIBUTION OF MARITAL ASSETS AND MARITAL DEBTS TO ROGER

| | Asset Value | Debt Owed | Net Asset Value |
|---|---|---|---|
| Interest in Safe Approach, Inc. | 112,000 | (56,000) | 56,000 |
| 1988 Century cabin cruiser | 29,000 | *(29,252)* | (252) |

**6.** The court found that Deborah owns eight of 200 shares of the stock in the family business. Her father testified the business was worth $75,000. Without a minority discount, her proportionate interest would be worth $3,000.

**7.** The court failed to provide values for the items in italics. I have used Roger's financial affidavit to estimate values not found by the court.

court. The question marks also indicate missing information.

**8.** The balance owed on the lease was $2,035 as of July 31, 1999, according to Roger's financial affidavit. The court did not attach a value to the leasehold interest in the vehicle.

| | | | |
|---|---|---|---|
| Condo dock slip | 17,000 | | 17,000 |
| 1969 GT OPEL | 6,200 | *(4,500)* | 1,700 |
| 1970 Elan snowmobile | 700 | | 700 |
| Morgan promissory note (4/14/98) | 10,000 | | 10,000 |
| Power tools | 7,000 | | 7,000 |
| Violin and home furnishings | 3,000 | | 3,000 |
| IRA account no. 1 | 5,200 | | 5,200 |
| IRA account no. 2 | 3,400 | | 3,400 |
| Reimburse Katie's Galaxy fund | | (5,700) | (5,700) |
| Home equity loan | | *(29,810)* | (29,810) |
| Condominium fees | | *(3,660)* | (3,660) |
| Personal loan | | *(5,500)* | (5,500) |
| VISA credit card debt | | *(4,500)* | (4,500) |
| Loan from Andre Drouin | | *(1,500)* | (1,500) |
| **TOTAL MARITAL NET WORTH** | | | **53,078** |

[¶ 37] A court must take into account "[t]he value of the property set apart to each spouse" as part of its disposition of the property. 19–A M.R.S.A. § 953(1)(B) (1998). Here, the overall distribution of the assets is unbalanced, which in some circumstances amounts to an abuse of discretion. *See Beattie v. Beattie*, 650 A.2d 950, 952 (Me.1994) (holding that, while certain elements of the divorce judgment "may be supportable independently, the evidence [did] not support the *cumulative effect* of the judgment") (emphasis added). The court's judgment does not demonstrate that it understood the extent of its unequal division of marital property.

## II. CHILD SUPPORT

[¶ 38] The court's award of child support is based on the assumption that Deborah's salary is her "gross income." By ignoring Deborah's net worth (especially the $150,000 from the insurance policy and Roger's promissory note in the amount of $56,000 with interest accruing at 7%), the court inflated Roger's support obligation. According to the child support guidelines, "[g]ross income includes income from an ongoing source, including, but not limited to ... interest ...." 19–A M.R.S.A. § 2001(5) (1998). Two hundred thousand dollars in cash and notes is certainly a source of ongoing income. A court should consider all of Deborah's "gross income" before making its child support determination.

## III. SPOUSAL SUPPORT

[¶ 39] With respect to Deborah's need for support, the court did not appear to consider any income from the proceeds of the $150,000 life insurance policy and the

7% return on Roger's $56,000 note. The Court seeks to justify this deficiency by characterizing the income from the 7% note and the $150,000 in cash as speculative because Roger may not pay the note and "[c]onceivably, Deborah might use the insurance proceeds to satisfy all her outstanding debt. In this scenario there would be no additional income to impute to Deborah." *Supra,* Court's opinion at ¶ 24. The Court invites Roger to return to court when he begins paying his note to Deborah or learns how Deborah invests her wealth. The Court fails to mention the transactional costs (primarily attorney fees) associated with doing so.

[¶ 40] Pursuant to the statute in effect at the time of the judgment, the court must consider "[t]he income history and income potential of each party." 19–A M.R.S.A. § 951(i)(E) (1998), *repealed by* P.L.1999, ch. 634, § 2. Determining the income generating capacity of cash and a 7% note is infinitely less speculative than the trial court's valuing of Roger's closely held company or its projecting of Roger's prospects for a bonus.

[¶ 41] When, as here, the court has ordered one party to pay the other a certain amount in the form of an interest-bearing note,[9] the court should take into account the interest income and interest expense. The income is not speculative, but has instead been ordered by the court and Roger may be held in contempt for his failure to pay that interest. *See City of Rockland v. Winchenbaugh,* 667 A.2d 602, 604 (Me.1995) ("Civil contempt is used to secure obedience to court orders. It is a coercive tool, available to parties who seek to enforce a previously obtained judgment.") (citation omitted).

[¶ 42] The $150,000 in life insurance proceeds will similarly provide a return regardless of how Deborah invests the money. Whether she places it in a money market account or invests it in her father's business, she can be expected to receive some return on her investment. For instance, if she places the money in a bank certificate of deposit at 6%, she will receive $9000 per year in income. Moreover, even if she uses a portion of the $150,000 to pay off some or all of her debts (the court assigned her approximately $54,000 in debt), she will be saving the interest that would have accrued on those debts. The court should consider the parties' assets and liabilities before making its spousal support determination.

## IV. ATTORNEY FEES

[¶ 43] The Court concludes that standing alone the trial court's finding regarding Roger's income justifies its decision to award attorney fees. We have said, however, that "[a]n award of attorney fees should be based on the parties' relative capacity to absorb the costs of litigation ... and all relevant factors that serve to create an award that is fair and just under the circumstances." *Largay v. Largay,* 2000 ME 108, ¶ 16, 752 A.2d 194, 198 (emphasis and internal quotation marks omitted). The court's judgment does not indicate that it considered Roger's relative capacity to service and retire over $140,000 in debt, to pay $6,500 in annual child support, $7,800 in annual spousal support, 100% of his litigation costs, and $4,000 of Deborah's attorney fees.

---

9. The court stated that the promissory note would "bear interest at the rate of 7% per year on the unpaid balance and shall be payable within 5 years from the date of said note which date shall [be] on or within 14 days of this judgment."