2001 ME 139

**Henry SHANOSKI**

v.

**Marjorie MILLER**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2001.

Decided: Oct. 2, 2001.

Henry I. Shanoski, Esq. (orally), Campbell & Associates, Portland, for the plaintiff.

Kenneth P. Altshuler, Esq. (orally), Portland, for the defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Henry Shanoski appeals from the judgment of the Superior Court (Cumberland County, *Crowley, J.*) affirming the judgment of the District Court (Portland, *Bradley, J.*) granting Marjorie Miller's motion to decline jurisdiction. Shanoski and Miller are divorced, and this case arose from a dispute regarding Shanoski's visitation with their daughter. Shanoski argues the court failed to apply the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A (1994 & Supp.2000), to resolve a jurisdictional conflict between Maine and North Carolina. He further argues the court abused its discretion in determining that Maine is an inconvenient forum pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 19–A M.R.S.A. §§ 1731–1783 (Supp.2000). We disagree with his contentions, and we affirm the judgment of the District Court.

## I. FACTS AND BACKGROUND

[¶ 2] Shanoski and Miller were married in 1988, in North Carolina. They moved to Maine, and their daughter was born in Maine in 1994; she is presently seven years old. When their daughter was seven months old, Miller took her to North Carolina where Miller's parents reside. Miller did not return to Maine, and Shanoski filed for divorce in Maine in 1995. The disputes in the divorce were eventually referred to a referee, and in April 1997, a judgment of

divorce, incorporating the referee's report, was entered in the Maine District Court (Portland, *Beaudoin, J.*). The judgment granted Shanoski and Miller shared parental rights and responsibilities of their daughter and granted primary physical residence of the daughter to Miller. It established a visitation schedule through early January 1998, and it ordered that 1998 visitation be decided at a binding reference to be held in January 1998 before the same referee. The final paragraph of the referee report states: "The parties have agreed that the jurisdiction and venue over this divorce matter and the subsequent reference relating to parental contact lies in Maine." [1]

[¶ 3] A hearing was held before the referee in January 1998 regarding visitation, and the referee issued a report in July 1998. The District Court entered, as an order amending divorce, the July 1998 referee's report establishing a visitation schedule, with dates through August 2000. The report stated that these visitation dates are "presumptively appropriate" and binding upon Miller absent a good cause request for alteration. The report further stated, "If the parties are unable to agree on a requested modification, the issue shall be submitted to binding arbitration before [the referee] or some other suitable person."

[¶ 4] During the spring of 1998 Shanoski filed a postjudgment motion to reduce the child support amount that he had been ordered to pay in the divorce judgment. The matter was referred to mediation, and child support as well as all other pending issues, including travel arrangements for

---

1. The term "contact" is used in several Maine statutes concerning parental rights and responsibilities. *See, e.g.,* 19–A M.R.S.A. §§ 1501(1), 1653(2), 1655, and 1657(1)(B) (1998). Although the term is not defined statutorily, for the purpose of this litigation, its meaning is the same as "visitation." Because this appeal concerns the PKPA and the UCCJEA, which both use the term "visitation" rather than the term "contact," the former term is used throughout this opinion except in direct quotes.

visitations, were resolved in mediation in January 1999.

[¶ 5] Several months later Miller, who had lived in North Carolina since early 1995, filed a complaint in the North Carolina District Court asking that court to assume jurisdiction and to amend the Maine visitation order. She alleged that the visitation schedule interfered with the daughter's schooling in North Carolina. Shanoski, who continued to reside in Maine, filed a motion to dismiss for lack of jurisdiction in the North Carolina court.

[¶ 6] Shortly thereafter, Shanoski filed a motion in the Maine court to enforce the arbitration clause of the July 1998 report of referee. The court (*Bradley, J.*) granted Shanoski's motion and ordered the parties to resolve the visitation dispute by binding arbitration. When the arbitration did not take place, Shanoski filed another motion to enforce in October 1999.

[¶ 7] The North Carolina court held a hearing on Shanoski's motion to dismiss in September 1999, and the North Carolina judge thereafter corresponded with Judge Bradley in Maine.[2] In his letter the North Carolina judge suggested that North Carolina had jurisdiction to modify the divorce. Judge Bradley responded by letter setting forth in detail the reasons for her conclusion that Maine continued to have jurisdiction. In her letter Judge Bradley noted that Miller had not asked the Maine court to decline the exercise of jurisdiction on inconvenient forum grounds.

[¶ 8] By order dated March 20, 2000, the North Carolina court denied Shanoski's motion to dismiss, ruling it had jurisdiction to enter orders pertaining to child custody and visitation. The court, however, made no order modifying the Maine divorce judgment, ruling only on the motion to dismiss.[3] Shanoski's appeal to the North Carolina Court of Appeals was dismissed.

[¶ 9] On April 5, 2000, Shanoski filed a motion in the Maine court to clarify the visitation schedule; Miller responded with a motion to decline jurisdiction. Miller argued that although Maine has jurisdiction, it should decline to exercise it and should defer all future hearings to North Carolina. The visitation issue, underlying the jurisdictional dispute, centered on whether the twelve weeks of visitation of the child with Shanoski, which had previously been in place, should continue because the child was now school age. Shanoski proposed that he continue to have his daughter visit with him in Maine for twelve weeks, and Miller objected to his proposed schedule claiming that it interfered with the child's education.

[¶ 10] By agreement of the parties, Miller's motion to decline jurisdiction was submitted to the court without an evidentiary hearing. By agreement, the court considered the motion with Miller's supporting affidavit and Shanoski's verified statement of opposition with exhibits. The court ruled that Maine had jurisdiction, but it stated that the issue was whether it should decline to exercise that jurisdiction on the ground of inconvenient forum. *See* 19–A M.R.S.A. § 1751. The court, stating that it had considered the inconvenient forum factors of the UCCJEA, § 1751(2), declined to exercise jurisdiction. It stated: "North Carolina is the more convenient and more appropriate forum to determine" the father-daughter visitation schedule.

2. The UCCJEA authorizes communication between courts concerning a child custody proceeding. 19–A M.R.S.A. § 1740. A "child custody proceeding" includes a proceeding regarding visitation. *Id.* § 1732(4).

3. At oral argument in this appeal, the parties represented that the North Carolina court has not entered any order modifying custody or visitation.

[¶ 11] Shanoski filed motions for findings of fact and conclusions of law and for reconsideration, which were denied.[4] Shanoski appealed to the Superior Court which affirmed the District Court, and he then filed a timely appeal to this Court. We review the decision of the District Court directly. *Dargie v. Dargie,* 2001 ME 127, ¶ 4, 778 A.2d 353, 355.

## II. UCCJEA AND PKPA

[¶ 12] Jurisdictional questions regarding determinations of child custody are controlled by the UCCJEA, 19–A M.R.S.A. §§ 1731–1783, and the PKPA, 28 U.S.C.A. § 1738A. The UCCJEA repealed and replaced the Uniform Child Custody Jurisdiction Act (UCCJA), 19–A M.R.S.A. §§ 1701–1725 (1998). The UCCJEA took effect January 1, 2000. *Id.* § 1782. The parties agree that the UCCJEA, rather than the UCCJA, governs this case.

[¶ 13] The PKPA prohibits a state from modifying a custody order of another state when the state that issued the custody order made that determination consistent with the provisions of the PKPA and its own laws and continues to be the state of residence of one of the parties.[5] 28 U.S.C.A. § 1738A(d); *Barclay v. Eckert,* 2000 ME 10, ¶ 9, 743 A.2d 1259, 1262. Pursuant to the UCCJEA, Maine has ex-clusive continuing jurisdiction over this visitation dispute because Maine made the initial child custody determination and one parent has a significant connection with Maine. *See* 19–A M.R.S.A. § 1746(1).

[¶ 14] The crux of Shanoski's argument is that because Maine had exclusive continuing jurisdiction, the PKPA prohibited North Carolina from accepting jurisdiction. He contends that because North Carolina acted erroneously in accepting jurisdiction, the PKPA prohibits Maine from declining to exercise jurisdiction. While Shanoski concedes that the Maine court could have declined to exercise its continuing jurisdiction on *forum non conveniens* grounds, he argues that Maine could not decline jurisdiction after North Carolina accepted jurisdiction.

[¶ 15] We disagree. Neither the PKPA nor the UCCJEA prohibit Maine from declining to exercise jurisdiction on the ground of inconvenient forum. In fact, both statutory schemes contemplate a court declining to exercise jurisdiction. The UCCJEA sets forth factors for a court to consider when deciding whether to decline to exercise jurisdiction, 19–A M.R.S.A. § 1751(2), and the PKPA states that a court may not modify a visitation determination of another state, unless that

---

4. In his motion to reconsider, Shanoski offered to amend his request for visitation to eliminate any interference with the child's school schedule and claimed the amendment would obviate the need for the matter to be heard in North Carolina where competent witnesses were available. The court responded:

> While the June 5th order indicates that North Carolina is the more convenient forum for school related issues, it also notes that North Carolina is the more appropriate forum because the child, now six, has been residing there since infancy and spends 80% of her time in that state; care providers and others having significant and long-standing contact with her are there. More information concerning the child's best interest is available in North Carolina, and any dispute about parental rights and responsibilities at this point should be litigated in that forum.

5. The PKPA states that a court "shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." 28 U.S.C.A. § 1738A(g).

other state no longer has jurisdiction "or has declined to exercise jurisdiction," 28 U.S.C.A. § 1738A(h). Neither statute supports Shanoski's interpretation that a court with exclusive continuing jurisdiction must exercise jurisdiction if another court has erroneously accepted jurisdiction.

## III. INCONVENIENT FORUM

[¶ 16] The question before us is not whether the North Carolina court committed error. Our concern is whether the Maine District Court exceeded the bounds of its discretion in declining to exercise jurisdiction. We review a decision to decline to exercise jurisdiction for reason of inconvenient forum for abuse of discretion. *Alley v. Parker*, 1998 ME 33, ¶ 6, 707 A.2d 77, 79.

[¶ 17] The UCCJEA provides specific factors to be considered by a court with continuing exclusive jurisdiction in determining whether it is the appropriate forum or whether another state is the more appropriate forum. 19–A M.R.S.A. § 1751(2). The first listed factor is whether domestic violence has occurred and which state can best protect the parties and the child. *Id.* § 1751(2)(A). There was no evidence of domestic violence in this case, and thus, this factor has no bearing on the matter.

[¶ 18] The second factor is "[t]he length of time the child has resided outside [Maine]." *Id.* § 1751(2)(B). The court noted that the child had lived in North Carolina since she was less than a year old and had spent approximately 80% of her time in North Carolina.

[¶ 19] The court did not discuss the third factor, which is the distance between the two states. *Id.* § 1751(2)(C). Although Shanoski had pointed out to the court that the distance is 900 miles, he did not raise any issue about the distance except for the expense of travel, and he has made no argument in this Court concerning this factor.

[¶ 20] Expense is a concern in the fourth factor which is the parties' "relative financial circumstances." *Id.* § 1751(2)(D). The court did not discuss this factor, possibly because there was so little evidence on it. The evidence before the court was that Shanoski is an attorney with a substantial education debt. Neither his verified opposition nor Miller's affidavit gave Shanoski's income. Miller's income was approximately $25,000 annually, and her parents, who are described as wealthy by Shanoski, have assisted her with litigation costs. Before this Court, Shanoski does not make any argument that the financial facts demonstrate that Maine should exercise jurisdiction.

[¶ 21] The fifth factor is whether there is "[a]ny agreement of the parties as to which state should assume jurisdiction." *Id.* § 1751(2)(E). The 1997 referee's report stated that the parties had agreed that Maine had jurisdiction over the divorce and the ordered reference for the unresolved 1998 visitation. On its face, however, that agreement is limited to the divorce itself and the unresolved 1998 visitation. It was not an agreement that Maine would exercise jurisdiction in all future disputes, nor was it an agreement to arbitrate all future disputes. The second referee's report contains no agreement regarding jurisdiction or arbitration; the parties were *ordered* to arbitrate future disputes.

[¶ 22] The sixth factor deals with the "nature and location of the evidence" for the custody dispute. *Id.* § 1751(2)(F). The court found that more information regarding the child was in North Carolina than Maine. The court stated that "care providers, teachers, and others who have had significant and longstanding contact"

with the child are in North Carolina. Because the dispute between the parties centered on the disruption that visitation may have on the child's education, it was particularly appropriate that the court consider that teachers' testimony may have a bearing on the outcome. The court did not ignore the fact that Maine witnesses may also have testimony as it suggested that the Maine witnesses could testify by deposition or telephonically.

[¶ 23] The next factor concerns the respective courts' abilities to decide the case expeditiously. *Id.* § 1751(2)(G). Shanoski argues that Maine can act more fairly and expeditiously than North Carolina because Maine allows parties and witnesses to appear and testify by telephone. He states that the North Carolina court would not let him appear by telephone for the oral argument on his motion to dismiss. Shanoski, however, was acting pro se in that matter. There was no evidence that North Carolina would not allow Maine witnesses to testify telephonically. The Maine court found that more witnesses who have significant information about the child and her circumstances are located in North Carolina. This fact implies that it would be more expeditious for the North Carolina court to schedule a hearing.

[¶ 24] The final factor is the familiarity of each court with the facts and issues. *Id.* § 1751(2)(H). Although the Maine court did not discuss this factor, the voluminous file indicates that the Maine court has been presented with more of the issues than the North Carolina courts.

[¶ 25] Shanoski also makes a general argument, regarding all of the factors, that the court should have addressed each factor, made specific findings of fact on each factor, and concluded which factors weighed in favor of or against declining to exercise jurisdiction. The inconvenient forum statute, however, does not expressly require the court to make findings of fact and conclusions of law for each factor. The statutory requirement is for a court to consider the factors. *Id.* § 1751(2). We have not, by case law, required trial courts to specifically enumerate their findings on each factor in those situations in which there are statutory factors to be considered. *See MacCormick v. MacCormick,* 513 A.2d 266, 268 (Me.1986) (stating trial court not required to give detailed findings on each statutory factor concerning best interests of children). We require trial courts to make findings that are sufficient to inform the parties of the court's reasoning and sufficient for effective appellate review. *Dargie,* 2001 ME 127, ¶ 2, 778 A.2d at 353.

[¶ 26] In this case, the court found that the child had spent 80% of her life in North Carolina and that her teachers, care providers, and others who had spent significant time with her were located in North Carolina. These facts related to three of the statutory factors: (1) the length of time the child has lived outside Maine, 19–A M.R.S.A. § 1751(2)(B); (2) the nature and location of the evidence, *id.* § 1751(2)(F); and (3) the ability of each court to decide the case expeditiously, *id.* § 1751(2)(G). We are not persuaded that the court ignored evidence regarding other factors or that the court gave improper weight to the factors it discussed. The court's thoughtful discussion was sufficient to inform the parties of the basis of its decision and sufficient for us to perform our function of appellate review.

[¶ 27] The Maine court determined that because of the length of time that the child had lived in North Carolina and because more of the evidence relating to the child was in North Carolina, Maine was an inconvenient forum and North Carolina was the more appropriate forum. We cannot conclude that the Maine court exceeded or

abused its discretion in making that determination.

The entry is:

Judgment affirmed.