IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2005 Session

## IN RE B.N.W.

**Appeal from the Juvenile Court for Davidson County**
**No. PT20255, PT23364     Betty Adams Green, Judge**

_____

**No. M2004-02710-COA-R3-JV - Filed December 20, 2005**

_____

This appeal involves the decision of the Davidson County, Tennessee, Juvenile Court to decline to exercise jurisdiction, other than temporary emergency jurisdiction, in a child custody case under the Uniform Child Custody Jurisdiction and Enforcement Act. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

L.R. DeMarco, Nashville, Tennessee, for the Appellant, Debra Whitehead.

Mike J. Urquhart, Nashville, Tennessee, for the Appellant, William C. Spann.

Stephen S. Ogle, Nashville, Tennessee, for the Appellee, Robbie Whitehead.

## OPINION

This appeal is before the Court on the technical record only (Tenn.R.App.P. Rule 24(a) record) as we are favored with neither a transcript of the evidence pursuant to Tennessee Rule of Appellate Procedure 24(b) nor a Statement of the Evidence pursuant to Tennessee Rule of Appellate Procedure 24(c). To the extent that resolution of the issues on appeal depend on factual determinations, the lack of a transcript or Statement of the Evidence is essentially fatal to the party having the burden on appeal. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn.Ct.App.1992). It is the duty of the appellant to prepare a record which conveys a fair, accurate and complete account of what has transpired in the trial court with respect to the issues that form the basis of the appeal. *State v. Boling*, 840 S.W.2d 944, 951 (Tenn.Ct.Crim.App.1992). Mere statements of counsel, which are not appropriate proffers or not effectively taken as true by the parties, cannot establish what occurred in the trial court unless supported by evidence in the record. *State v. Thompson*, 832 S.W.2d 577, 579 (Tenn.Ct.Crim.App.1991).

Laboring under such limitations, we will address the issues based upon the record that is before us without consideration of extraneous assertions made in brief and at oral argument which are not supported by the record. A chronological history of this litigation, both in Alabama and in Tennessee, is essential to an understanding of the issues in this case, and such chronological history, as is shown by this record, establishes that the minor child, B.N.W., was born to Mark Whitehead ("Father") and Debra Whitehead ("Mother") on December 28, 1998. The Whiteheads and B.N.W. resided on the property of the paternal grandparents, Milton Whitehead ("Grandfather") and Robbie Whitehead ("Grandmother").

The first order in the record was issued by the Juvenile Court of Lauderdale County, Alabama, on February 15, 2001, following a pre-trial hearing on February 13, 2001. This Order provides in pertinent part:

> All parties to this action had been previously served. None of the Respondents had filed an Answer or otherwise responded to the Petition. At the time set for pre-trial hearing, neither of the Respondents, Debra Whitehead nor Mark Whitehead appeared. The Court understands that Mark Whitehead is presently incarcerated in the Lauderdale County Detention Center. The Court understands that the Guardian ad litem, Heath Trousdale had sent letters to the parents requesting they contact him to discuss the matters alleged in the Petition, however, neither parent had contacted him prior to the pre-trial hearing.
>
> The Petitioners, Milton and Robbie Whitehead appeared at the time set for pre-trial hearing and advised the Court that they understood that neither the Mother nor the Father intended to contest the custody of the minor children being placed with them. The Court assumes this to be true as neither parent filed a response to the Petition filed by the Petitioners. Based upon this, the Court ORDERS, ADJUDGES and DECREES as follows:
>
> 1. Custody of the minor children, [D.R.W.], [D.P.W.] and [B.N.W.] are hereby vested in the paternal grandparents, Milton Whitehead and Robbie Whitehead. The paternal grandparents shall have the full custody of said children and are hereby authorized and directed to act in any way necessary to effectuate the best interest of said children.
>
> 2. The Mother is directed to prepare an Affidavit of Income and file it with the Court for purposes of entering an Order regarding child support within fourteen (14) days from the date of this order. The Father, who is presently incarcerated in the Lauderdale County Detention Facility shall file an Affidavit of Income with the Court no later than fourteen (14) days from the date of his release from the Lauderdale County Detention Facility. Child support will be based upon the incomes of the parties and in accord with a ARJA 32.

3. The Court understands from the Petitioners that there have been several instances of domestic violence between the Respondents. Based upon that, visitation shall be at the discretion of the Petitioners, Milton Whitehead and Robbie Whitehead.

4. The parents shall cooperate in seeing that any items of personalty in the possession of either Respondent which belongs to the minor children is promptly provided to the Petitioners for the use and benefit of the minor children.

5. The Court further understands that there have been certain problems with regard to substance abuse by the Respondents. The Court reiterates its directive to the Mother and Father that they attend counseling sessions as directed by Riverbend. If the parents comply with this, the Court will consider expanding the visitation rights of the parents upon proper application to the Court.

Additional history is gleaned from an Order entered by the Juvenile Court of Lauderdale County, Alabama, on August 19, 2003, which provides in relevant part:

This matter was set for hearing on July 15, 2003. The parties appeared with counsel as did the Guardian Ad Litem. The Court met with counsel for the parties, after which the counsel met with their respective parties. Certain matters were agreed to and certain matters were reserved for the Court's decision based upon the discussions had in chambers and testimony at the subsequent hearing.

From the testimony, discussions, and the agreements, the Court finds that the minor child, [B.N.W.] , a minor born 12-28-98, has primarily resided on the premises where both her parents and paternal grandparents resided since her birth. The parents of [B.N.W.] lived on the premises with their child until the death of the Father, Mark Whitehead, on May 16, 2002. At some time after that, the Mother left the premises and the child has resided on the premises with the paternal grandmother (the grandfather, Milton Horton, has since passed away).

The grandmother also has custody of two half brother[s] to [B.N.W.], [D.R.W.], and [D.P.W.], in that the Mother and Father of the children are deceased. Mark Whitehead is the Father of all the children. Those children, as well, have resided on the premises of the paternal grandparents for the majority of their lives.

By agreement, temporary custody of [B..N.W.] has been vested in the paternal grandmother since July 17, 2001. The Mother has exercised visitation with the minor child in increasing amounts since that time.

Due to the close relationship that the child has shared, most of her life, with her grandmother and the fact that she has grown up with her half siblings, the Court finds that the best interest of the minor child will be served with an Order granting

visitation to the grandmother so that the child can continue to maintain her close relationship with the grandmother and with her half siblings.

The Court reserves jurisdiction to continue monitoring progress in this cause of action.

The parties announced to the Court that an agreement had been reached as to custody and visitation of the minor child, but did not agree to how the visitation exchanges would take place. The Court has considered the testimony and agreements, ratifying the parties' agreement as to custody of the minor child being returned to the Mother, and further Orders that exchange of visitation shall continue to at the McDonald's at the intersection of Highway 72 and I-65 in Athens, Alabama.

The grandmother shall begin visitation on Thursday, August 21, 2003 at 5:00 p.m. and continue until Sunday, August 22, 2003 at 5:00 p.m.. After said visitation, the grandmother shall have visitation every other weekend beginning at 5:00 p.m. on Friday until 5:00 p.m. on Sunday. Regular visitation shall begin September 5, 2003, and continue each and every other weekend until further Order fo the Court.

The grandmother shall have regular visitation by telephone with the minor child. The grandmother may call the minor child two times per week during the hours of 8:00 a.m. and 8:00 p.m.

The mother will be subject to random drug screens at the direction of the Court.

Each party is responsible for paying one-half (½) of the Guardian Ad Litem fees.

This Court shall retain jurisdiction over this matter and shall have a review hearing on the 17th day of February, 2004, at 11:30 a.m. before the undersigned.

The mother had resided in Davidson County, Tennessee, before the July 13, 2003, hearing that resulted in the August 19, 2003, Order of the Juvenile Court of Lauderdale County, Alabama. She then took B.N.W. with her to Tennessee. She returned to Alabama, however, for the review hearing set for February 17, 2004, in the Lauderdale County, Alabama, Juvenile Court. Following that hearing, an order was entered providing:

This cause having come before the Court on a review, and all interested parties being present, it is **ORDERED, ADJUDGED and DECREED** as follows:

1.  That the full care, custody, and control of the above named minor child is hereby awarded to the mother/plaintiff.

2.     The defendant/paternal grandmother is awarded visitation privileges with said minor child in accordance with the "In-State Standard Visitation Guidelines" incorporated by this Court and attached hereto as Exhibit A. The parties shall continue to exchange the minor child for visitation as previously agreed.

3.     Provisions of previous orders not specifically modified herein shall remain in full force and effect.

**DONE and ORDERED** on this the 23 day of February 2004.

For reasons not disclosed by the record, Debra Whitehead filed a Petition to Enroll Foreign Decree in the Juvenile Court of Davidson County, Tennessee, on April 14, 2004.[1] This Petition provided:

Comes now the Petitioner, Debra Whitehead, and respectfully alleges unto the Court as follows:

1.     That Petitioner is a resident of Hermitage, Davidson County, Tennessee and resided at 2034 Nora Lane in Hermitage, Davidson County, Tennessee 37076 and has resided in Tennessee for over two (2) years. The minor child, [B.N.W.], has resided in Tennessee since July 15, 2003. The Respondent is a resident of Lauderdale County, Alabama and resides at 6395 Highway 157, Florence, Alabama 35633.

2.     That on February 23, 2004, in the Circuit Court of Lauderdale County, Alabama, Juvenile Division, an order was entered in case #JU-2001-004.01 in regard to the custody and visitation of [B.N.W.]. A copy of the described order authenticated in accordance with the Acts of Congress and the statutes of Tennessee is attached hereto as Exhibit A and incorporated herein by reference.

3.     The order attached hereto as Exhibit A provided for the custody and visitation between Debra Whitehead, the mother of the minor child, and Robbie Whitehead, the paternal grandmother of the minor child. Mark Whitehead, the father of the minor child, is deceased.

4.     The Petitioner alleges that the order attached hereto as Exhibit A is entitled to full faith and credit in the Courts of the State of Tennessee.

---

[1]We are informed by counsel for Robbie Whitehead in oral argument that the reason for this action by Debra Whitehead was that she intended, after the Alabama decree was enrolled in Tennessee, to file a Petition to have the Tennessee Court modify the visitation arrangement for Robbie Whitehead. The record before this Court discloses nothing of this character.

5.     The Petitioner's Affidavit setting forth the name and last known address of the Respondent and Petitioner is attached as Exhibit B and incorporated herein by reference.

6.     There are no other states in which this order is registered.

**WHEREFORE PREMISES CONSIDERED, PETITIONER PRAYS:**

1.     That proper process issue and be served upon the Respondent.

2.     That after notice and hearing this Court order enrollment of the order attached hereto as Exhibit A for enforcement of this foreign decree in this honorable court.

3.     That Petitioner be granted such further relief, both general and specific, to which she is entitled.

On June 3, 2004, Robbie Whitehead filed her answer in the Juvenile Court of Davidson County to the Petition seeking to enroll the Alabama judgment in Davidson County. This response provides:

1.     The respondent is without knowledge sufficient to admit or deny the first sentence of paragraph 1 of the petition, and strict proof thereof is accordingly demanded. The remaining allegations in paragraph 1 are admitted.

2.     The allegations set forth in paragraph 2 of the petition are admitted; however, the Alabama order speaks for itself.

3.     The allegations set forth in paragraph 3 of the petition are admitted; however, the Alabama order speaks for itself.

4.     In response to the allegations set forth in paragraph 4 of the petition, the respondent asserts that Tennessee lacks jurisdiction to entertain this matter under the Uniform Child Custody Jurisdiction Act.

5.     In response to the allegations set forth in paragraph 5 of the petition, the respondent admits that an affidavit is attached to the copy of the petition that was served upon her.

6.     The respondent is without information sufficient to admit or deny the allegations set forth in paragraph 6 of the petition, and strict proof thereof is accordingly demanded.

7. Any allegations contained in the petition that have not been admitted, denied or explained are hereby generally denied.

5. It is denied that the petitioner is entitled to any of the relief she seeks in her petition.

6. While the petitioner has requested that this Court enroll the Alabama order for enforcement, she has not asserted that the respondent has violated any of its provisions and has failed to request any affirmative relief. The petition in this matter is a thinly veiled attempt to circumvent the jurisdiction of the Alabama court, which just rendered the order that the petitioner seeks to "enforce" on February 23, 2004. Inasmuch as the petitioner seeks no affirmative relief, this matter is not ripe for adjudication.

WHEREFORE, the respondent prays that the petition in this matter be dismissed and that the costs of this cause be taxed to the petitioner.

On June 29, 2004, referee Alan Calhoun of the Davidson County Juvenile Court entered an order acknowledging the Petition to Enroll and the Answer thereto, together with the jurisdictional issues raised under the pleadings. He ordered briefs from the parties and rescheduled the hearing for July 21, 2004.

So it is at this point in the Davidson County proceedings that we have a petition by the mother naming only the paternal grandmother as a respondent seeking to enroll the February 23, 2004, order of the Juvenile Division of the Circuit Court of Lauderdale County, Alabama, and seeking enforcement of the Alabama order in Tennessee. We then have the answer of the paternal grandmother pointing out that the Petition to Enroll seeks no relief from the Alabama judgment, nor any other affirmative relief but seeks only the enforcement of the Alabama order. The answer of the grandmother further denies the jurisdiction of the Juvenile Court of Davidson County either to enroll the Alabama judgment or to take jurisdiction for any other purpose.

Before the pending jurisdictional issues could be adjudicated, the State of Tennessee Department of Children's Services on June 30, 2004, filed a petition asserting that B.N.W. resided in Davidson County, Tennessee, and was a dependent and neglected child. The petition asserts:

This Petitioner received a referral on June, 22 2004. Statements from the referral stated indicated that the mother was abusing the prescription drug, Oxycontin. That within two days she had ingested ten of fifteen pills that had been prescribed to her. The referral also indicated the mother had used cocaine as well. The referent stated that mother was being transported to Summit Hospital.

This Petitioner first interviewed Ms. Whitehead (mother) at Tennessee Christian Hospital. She admitted to a history of cocaine use and a current abuse of pain medication.

Further investigation showed that the father of this child is deceased. A history of this case shows an unfounded case from 2001 on an adult sibling.

This Petitioner next interviewed Mr. Spann (maternal grandfather). He stated that he has been taking care of the mother and the child for the past two years. He further stated that Ms. Whitehead has a history of drug abuse and mental illness. He then stated that he would like to petition the court for the temporary custody of his granddaughter.

Based on this initial investigation this Petitioner was able to enter into a safety plan with the mother and the maternal grandfather. It will expire on July 2, 2004.

This Petitioner is requesting an adjudication and requests a change of custody. The Department would request that custody of the minor child be granted to William Calvin Spann, maternal grandfather. He is an appropriate party that will provide for the health and safety of the child while her mother addresses her drug abuse issues.

On July 6, 2004, Davidson County Juvenile Referee Calhoun placed custody *pendente lite* of B.N.W. in maternal grandfather, William C. Spann, of Davidson County.

On July 15, 2004, Honorable Mike J. Urquhart, attorney at law, filed a Notice of Appearance on behalf of William C. Spann.

The case was heard by Juvenile Referee Alan Calhoun on July 20 and 21 of 2004 resulting in an order issued on August 17, 2004, providing:

This matter came on for hearing on the 20th and 21st days of July, 2004, before the Honorable Alan Calhoun, Referee, upon the briefs of the parties with regard to jurisdictional issues under the Uniform Child Custody Jurisdiction and Enforcement Act and the Parental Kidnapping Prevention Act, the motions of Robbie Whitehead filed July 13, 2004, the argument of counsel and the entire record in this action; whereupon, the Court ORDERED as follows:

1. Robbie Whitehead shall have visitation with the minor child, [B.N.W.], on July 20, 2004.

2. For so long as William Calvin Spann has *pendente lite* custody of the [B.N.W.], he shall comply with all provisions of the order entered February 24, 2004, a copy of which is attached hereto as an exhibit and is incorporated herein by reference, by the Juvenile Court for Lauderdale County, Alabama, regarding visitation between Robbie Whitehead and [B.N.W.], except that henceforth Mr. Spann and Robbie Whitehead shall meet to exchange the child at the Tennessee Welcome Center on Interstate 65 at 6:30 p.m. on alternating Fridays beginning

Friday, August 20, 2004, and meet to exchange the child again at 6:30 p.m. on alternating Sundays.

3. Robbie Whitehead shall have visitation with [B.N.W.] for two weeks beginning July 23, 2004, at 6:30 p.m., and ending on August 5, 2004, at 6:30 p.m. Mr. Spann and Robbie Whitehead shall meet at the Tennessee Welcome Center on Interstate 65 on these dates and at these times to exchange [B.N.W.].

4. The parties shall not discuss the case with [B.N.W.].

5. The Court shall communicate with Judge Larry Mack Smith and/or his successor in office, in care of the Lauderdale County Courthouse, 200 South Court Street, Florence, Alabama 35630, (256) 760-5825, pursuant to the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act.

6. The Court denies the motion of Robbie Whitehead praying that the Court vacate its July 6, 2004, preliminary hearing order.

7. This Court is exercising temporary emergency jurisdiction of this matter pursuant to section 36-6-219 of the Tennessee Code Annotated; however, the extent of its jurisdiction remains disputed.

Between the hearing on July 20 and 21, 2004, and the entry of the order of August 16, 2004, certain events apparently occurred which we can only glean from the allegations of certain petitions and an unsigned order which appears in the record. On August 6, 2004, William C. Spann filed a petition in the Juvenile Court of Davidson County asserting:

1. That on July 20, 2004 this matter was before the Honorable Alan Calhoun regarding the domestication of an order of an Alabama Court, granting Robbie Whitehead visitation of the minor child and Robbie Whitehead's attempt to vacate a subsequent placement of the child with William Spann by this court due to allegations of drug use by the mother.
2. All parties were present including Robbie Whitehead, at the aforementioned hearing with the exception of the mother of the minor child, Debbie Whitehead, who was represented by her attorney, The Honorable L.R DeMarco.
3. That the mother and child have lived in Davidson County from July 2003 to present.
4. That in July 2003 mother had custody returned to her by the Alabama Court, subject to a review hearing in February 2004.
5. That at the review hearing in February 2004 custody remained with the mother and that Robbie Whitehead had visitation only.

-9-

6. At all times relevant after July 2003 the child and mother lived and resided in Davidson County Tennessee with William Spann.

7. The father of the child is deceased.

8. At the aforementioned hearing Referee Calhoun denied the motion of Robbie Whitehead to vacate the order granting William Spann custody of the child.

9. The Court ordered that Robbie Whitehead would be allowed to exercise visitation pursuant to the order of the Alabama Court and stated that the child would be returned to William Spann upon the expiration of the Visitation by Robbie Whitehead pending further orders of the Court.

10. Visitation was scheduled from July 23, 2004 to August 5, 2004.

11. The Court warned Robbie Whitehead that failure to return the child would constitute "kidnapping."

12. On August 5, 2004 at about 3:12 p.m. counsel for Robbie Whitehead informed the undersigned that she would not be returning the child pursuant to the order entered on July 20, 2004.

13. The reason given was that on or about July 19, 2004 the Alabama Court granted Immediate Temporary Custody of the child to Robbie Whitehead and therefore would not return the child to William Spann.

14. That as of today the child has not been returned.

15. The Court on July 20, 2004 **as agreed to by all counsel** maintained temporary jurisdiction of this matter pending further hearing scheduled on August 18, 2004 and that this date was after the date of the order entered by the Alabama Court.

16. That Robbie Whitehead failed to inform the Court that the order entered by the Alabama Court was entered on July 19, 2004 in an apparent attempt to mislead the court in order to gain an advantage in the litigation.

17. That the actions of Robbie Whitehead constitute a violation of this courts orders.

18. Further, the Guardian *Ad Litem*, Susanne McGowan spoke with the child just prior to the child departing for visitation with Robbie Whitehead and told her that she would be returning to live with William Spann.

19. That the child is set to start school on August 16, 2004 and has been enrolled.

20. That the actions of Robbie Whitehead are not in the best interest of the child and are causing irreparable harm to the minor child.

21. That due to the dependant neglect allegations and the fact that no custody case was pending at the time, this Court maintains exclusive jurisdiction of this matter.

22. That undersigned counsel has informed all parties that he is attempting to have an emergency hearing on this matter and was informed by all, except the Guardian *Ad Litem* that they could appear today. The Guardian informed undersigned counsel she could appear telephonically if the Court so granted.

Wherefore, the movant prays for the following:

1. That this matter be set for an emergency hearing on August 6, 2004.
2. That the Court enter the attached proposed order stating that all times relevant and to further orders of this court as agreed to by the parties of this Court and that said hearing be set for October 18, 2004 as previously ordered.
3. That the court order Robbie Whitehead to immediately return the child to the State of Tennessee and to William Spann at his residence and no later then [sic] 5:00 p.m. on August 6, 2004.
4. That the Court impose sanctions to Robbie Whitehead to include but not limited to the costs of this action, attorney fees for the Movant, Debbie Whitehead, the Department of Child services and the Guardian *Ad Litem* to be set at a later hearing.
5. That the Court authorizes William Spann to take any action to include obtaining an arrest warrants [sic] for violation of the appropriate statutes.

An order that is unsigned appears in the record whereby Honorable W. Scott Rosenberg, Referee, held:

This matter came on for hearing on the 6th day of August, 2004, before the Honorable W. Scott Rosenberg, Referee, upon the emergency motion filed August 6, 2004, by William Calvin Spann seeking an order requiring Robbie Whitehead to return the minor child, [B.N.W.], to Tennessee from Alabama; whereupon, the Honorable W. Scott Rosenberg, Referee, and the Honorable Alan Calhoun, Referee, conferred via telephone with the Honorable Larry Mack Smith, Judge of the Juvenile Court for Lauderdale County, Alabama. After this telephone conference, the Court was of the opinion that the aforementioned emergency motion should be denied. It is, accordingly, ORDERED that the the [sic] emergency motion filed August 6, 2004, by William Calvin Spann seeking an order requiring Robbie Whitehead to return the minor child, [B.N.W.], to Tennessee from Alabama is hereby DENIED. The Honorable Alan Calhoun, Referee, shall draft a separate order setting forth additional ruling by the Court. All other matters are reserved.

ENTER this the _____ day of August, 2004.

There appears in the record a Notice of Appeal to the Juvenile Court from this order filed by the Department of Children's Services and reciting:

-11-

Comes the State of Tennessee, Department of Children's Services, by and through its undersigned counsel, and respectfully notifies this Honorable Court of it's notice of appeal of an order issued on August 6, 2004 by Special Referee S. Rosenberg and to request an emergency hearing on the above-mentioned minor child regarding jurisdiction.

The Department of Children's Services filed an Emergency Petition to adjudicate dependency and neglect on June 30, 2004. This Court entered an order granting the removal of legal custody of the minor child from her mother, Debra Whitehead on that day. On July 6, 2004 this Court took jurisdiction when it found probable cause and upheld the Department's removal. As a least drastic alternative the Court found William Spann to be an appropriate placement and granted temporary legal custody to him.

Movant was notified of an emergency motion filed on behalf of William Spann, on August 6, 2004. (See attached Exhibit A.). Present at the hearing were Dana Garner, attorney for DCS, Mike Urquhart, attorney for Mr. Spann, Stephen Ogle, attorney for paternal grandmother, Robbie Whitehead. Counsels that was not present but had been notified by Attorney Urquhart were the Guardian ad Litem, Susie McGowan, and Ralph DeMarco, attorney for the mother, Debra Whitehead. The only issue before the court that day was a request for the grandmother to obey the Court's July 21, 2004 order to return the child to Mr. Spann. (At this time Movant is unable to provide a copy of such order. Attorney Ogle was instructed by the Court to draft such order but Movant has not received a filed copy of such order.)

At the August 6th hearing, the Court ordered that the paternal grandmother, Robbie Whitehead return the physical custody of said child to her legal guardian, William Spann immediately.

The Court requested Attorney Urquhart to draft the order immediately. The Court stated that the order was going to be signed before the end of the day. Attorney Urquhart requested that Attorney Ogle call his client and inform her of the order. Attorney Urquhart announced that he would prefer Attorney Ogle make an attempt at gaining cooperation from Ms. Whitehead because if she failed to obey the order, he would have an arrest warrant issued for Ms. Whitehead immediately. The hearing was adjourned.

Approximately two hours later Movant received a phone message from Attorney Urquhart stating that the Court had reversed its previous order after receiving notice from a family court judge in Alabama that such court would be retaining jurisdiction of the minor's child custody case. To the best of Movant's information, knowing and belief no order of these finding had been reduced to writing at this time. The Department does not have a copy of such order.

Movant would request that in as much Movant did not receive notice of a subsequent hearing regarding the reversal of the original order by Special Referee S. Rosenberg, Movant respectfully requests that a full hearing on the issue of jurisdiction be set immediately. The issue of jurisdiction was decided without notice to the Department. For cause, Movant would state that jurisdiction was not an issue stated in the emergency motion that was heard on August 6, 2004.

Additionally Movant has a current petition pending in this Court and is to be adjudicated on October 13, 2004. Movant would argue that this Court retains jurisdiction over said minor child pursuant to the petition filed by the Department on June 30, 2004 and based on the actions of the Court on July 6, 2004. Further the current petition has not been disposed of properly.

Movant would respectfully request that a hearing on these matters be set immediately in order to insure the safety and well-being of the minor child, [B.N.W.].

On August 19, 2004, Robbie Whitehead filed in the Davidson County Juvenile Court a Request for Registration and Enforcement of Alabama Decrees which provided:

Comes now Robbie Whitehead, by and through counsel, pursuant to section 36-6-229 of the Tennessee Code Annotated, and MOVES this Court to enter an order registering and enforcing the orders of the Juvenile Court for Lauderdale County, Alabama, regarding the minor child, [B.N.W.], which are attached hereto and incorporated herein by reference and are authenticated in accordance with the acts of Congress and/or the statutes of this State. Further, Robbie Whitehead, through counsel, states under penalty of perjury that to the best of her knowledge these orders have not been modified since the most recent order entered July 19, 2004, but that the Alabama court will conduct a hearing regarding the child on August 20, 2004. A copy of the order resulting from that hearing authenticated in accordance with the acts of Congress and/or the statute of this State will be filed with the Court when counsel has received it.

Notice is hereby given to the persons served with this request (Debra Whitehead and William Calvin Spann, whose address is 2034 Nora Lane, Hermitage, Tennessee 37076, are served via their respective attorneys inasmuch as they are already parties to this proceeding.), (1) a registered determination is enforceable as of the date of the registration in the same manner as a determination issued by a court of this state; (2) a hearing to contest the validity of the registered determination must be requested within twenty (20) days after the service of this notice; and (3) failure to contest the registration will result in confirmation of the child-custody determination and preclude further contest of the determination with respect to any matter that could have been asserted.

Filed with this petition and exemplified by the Juvenile Court of Lauderdale County, Alabama, is an order dated July 19, 2004, providing:

This matter having come before the Court on the Petitioner's Motion for Immediate Temporary Custody and the Court having considered the same, it is therefore,

ORDERED, ADJUDGED and DECREED, that temporary custody of the minor child, [B.N.W.] is vested in the Petitioner, Robbie Whitehead, pending a hearing held in this matter.

It is further, ORDERED, ADJUDGED and DECREED, that is matter is set down for a hearing on the 20th day of August, 2004, at 10:30 o'clock, a.m. in courtroom number four of the Lauderdale County Courthouse, located in Florence, Alabama.

DONE and ORDERED, this the 19 day of July, 2004.[2]

Various other motions were filed resulting in some confusion in the record, much of which is allayed by an order entered on August 30, 2004, by Juvenile Referee Alan Calhoun providing:

This matter came before the Court due to several different pleadings. The mother, Ms. Debra Whitehead, filed a petition to register a foreign decree. Ms. Debra Whitehead is the legal custodian of [B.N.W.]. This petition is opposed by the paternal grandmother, Robbie Whitehead who, pursuant to a long history of court proceedings in Alabama has court-ordered visitation with the child. While that matter was pending, the Tennessee Department of Children's Services filed an emergency removal petition alleging that the mother had overdosed on drugs. Upon a waiving of the preliminary hearing on the emergency removal by the mother, the Department of Children's Services placed temporary custody of [B.N.W.] with the maternal grandfather, Bill Span[n].

Judge Larry Mack Smith vested temporary custody of [B.N.W.] with Robbie Whitehead in July of 2001. That temporary order remained in effect until July of 2003 at which point Judge Smith returned custody to the Debra Whitehead, made her subject to random drug screens, granted visitation to the paternal grandmother, and reserved jurisdiction over the matter in order to "continue monitoring progress in this cause of action." The Court reviewed the case in February of 2004 at which point the Court returned full legal custody to Ms. Debra Whitehead while also ordered that the previously ordered visitation continue. The Court further indicated that all issues not

---

[2]Also exemplified by the Alabama court and filed with the August 19, 2004, Petition by Robbie Whitehead are the previous orders of the Alabama Juvenile Court from which the history of the Alabama litigation has been gleaned.

in conflict with the above from its prior rulings remained in effect. It is not in dispute that Ms. Debra Whitehead moved to the Nashville area in roughly July of 2003.

Ms. Debra Whitehead filed her "Petition to Register Foreign Decree" on April 14, 2004, not even two months after the last court date in Alabama. Ms. Robbie Whitehead retained counsel to oppose the registration. The Court issued a scheduling order for responsive briefs. While the parties were in the midst of this process, DCS filed their petition. The placement of temporary custody with Mr. Spann occurred on July 6, 2004 by Special Referee Matthew Mayo. On July 21, 2004, the parties appeared before Referee Calhoun. This Court indicated that it retained emergency jurisdiction under UCCJEA encapsulated in T.C.A. §36-6-219. On that date, the Court indicated that it would communicate with its counterpart in Alabama and further indicated that the visitation provision with Ms. Robbie Whitehead would remain in effect while the child would remain as previously ordered with Mr. Span[n]. The Court was unaware of any "new" custody order issued by Judge Larry Mack Smith.

Evidently, Judge Larry Mack Smith issued a custody order on July 19th, 2004. By that order, the Court placed legal custody of [B.N.W.] with Robbie Whitehead on an emergency and *ex parte* basis. As it indicated it would, this Court communicated with the Alabama Court. In fact, two different conversations occurred. The first occurred shortly after the July 21, 2004 hearing. During that conversation, it was this Court's understanding that this Court would retain emergency jurisdiction over the matter pending a resolution of the overarching jurisdictional question. At that time, however, Judge Smith indicated that he did not have his file before him. The second conversation occurred when the parties appeared before Ref. Rosenberg on August 6, 2004. It should first be noted that Referee Calhoun was at home, on paternity leave, and unaware the case had appeared on an emergency basis before Ref. Rosenberg. Upon being informed of this, the Court again communicated with Judge Smith. However, no record was made of this conversation.

Judge Smith indicated that he was very familiar with the family and the issues in the case due to its long history in Alabama. Furthermore, it was the very concern about drug usage that factored into his jurisdictional keeping clause. He also indicated that he previously (and recently) found Ms. Robbie Whitehead's home appropriate for [B.N.W.]. It is noted by this Court that Robbie Whitehead fulfills the definition of a "Person acting as a parent" under the UCCJEA. Part of the purpose of the UCCJEA is to ensure that a custody dispute should be heard in the state which can best decide the case in the interest of the child. Put simply, upon consideration of T.C.A. 36-6-216 and 36-6-218, both Courts agreed that Alabama is the proper court of record. Accordingly, this Court will allow the Alabama custody order to remain intact.

SO ORDERED on the 30th day of August, 2004 *nunc pro tunc* to August 6, 2004.

An appeal was taken by Spann and Debra Whitehead to Juvenile Court Judge Betty Adams Green from the August 6, 2004, actions of Referees Calhoun and Rosenberg which are reflected in the *nunc pro tunc* order of August 30, 2004, filed by Alan Calhoun and that matter came on to be heard before Judge Green on August 10, 2004.[3]  The order by Judge Green provided:

This matter came on for hearing on the 10th day of August, 2004, before the Honorable Betty Adams Green, Judge, upon the notices of appeal of the ruling of the Honorable Alan Calhoun, Referee, and the Honorable W. Scott Rosenberg, Referee; whereupon, the Court took this matter under advisement and allowed the parties to submit briefs on the issues in this case arising under the Uniform Child Custody Jurisdiction and Enforcement Act.

It is, accordingly, ORDERED as follows:

1.      The orders of the Honorable Alan Calhoun, Referee, and the Honorable W. Scott Rosenberg, Referee, in this matter, which are hereby incorporated into this order by reference, are hereby confirmed by the Honorable Betty Adams Green, Judge, pursuant to the provisions of section 37-1-107 of the Tennessee Code Annotated and Rule 4 of the Tennessee Rules of Juvenile Procedure.

2.      The Honorable Betty Adams Green, Judge of the Juvenile Court for Davidson County, Tennessee, has spoken by telephone with the Honorable Larry Mack Smith, Judge of the Juvenile Court for Lauderdale County, Alabama, pursuant to the provisions of Uniform Child Custody Jurisdiction and Enforcement Act.  The judges agreed that the order of the Alabama court entered February 24, 2004, provided that all previous orders of that court remained in full force and effect, including the provisions of the Alabama court's order entered August 19, 2003, which stated, "The Court reserves jurisdiction to continue monitoring progress in this cause of action."  The aforementioned Alabama order also stated, "This Court shall retain jurisdiction over this matter and shall have review hearing on the 17th day of February, 2004, at 11:30 a.m. before the undersigned."  Judge Smith stated that he reserved jurisdiction over this matter in his Court due to his concern that the mother of the minor child, Debra Whitehead (hereinafter "mother") would relapse into drug abuse, which was what led to the removal of her child by the Alabama court as early as 2001.  The judges of both courts agreed that the child has extensive ties to the State of Alabama inasmuch as she resided from her birth to 2003 at the residence of her paternal grandmother, Robbie Whitehead (hereinafter "grandmother"), in Alabama and continued to visit her grandmother in Alabama on alternating weekends after the mother moved with the child to Tennessee in 2003.  The mother and the

_____

[3]The order reflecting this hearing before Judge Green was actually signed by Judge Green and entered on October 18, 2004.

child are represented in the Alabama by counsel and a guardian ad litem, respectively, and the mother is currently in treatment for her drug abuse in Alabama according to her Tennessee counsel.

3.      This court declines to exercise jurisdiction over any custody determination in this matter and hereby defers such issues to the Juvenile Court for Lauderdale County, Alabama; however, the Tennessee Department of Children's Services (hereinafter "Department") may proceed on its petition alleging that the mother has caused the minor child to be a dependent and neglected child within the definition set forth at section 37-1-102(b)(12) of Tennessee Code Annotated. This Court shall transfer any further proceedings involving the custody determination regarding this child to the Juvenile Court for Lauderdale County, Alabama.

4.      This Court is displeased by the conduct of the parties in failing to comply with the existing orders of both the Alabama court and this Court. Specifically, William Calvin Spann failed to honor the provisions of the Alabama court's orders regarding the child's visitation with her grandmother, and Robbie Whitehead failed to honor the provisions of this Court's order requiring her to return the child to Tennessee after this Court ordered that such visitation take place. This Court admonishes the parties to this litigation that no litigant may thumb his or her nose at the orders of any court dealing with the custody of this minor child. It is the fervent hope of this Court that the parties will put aside their own interests, focus instead upon what is best for the minor child and comply with whatever visitation regimen the Alabama court orders. It is clear that the parties in this case all love [B.N.W.], and she is entitled to the love of all of the members of her family on both sides.

5.      This Court finds that custody of [B.N.W.] is currently vested in Robbie Whitehead pursuant to the provisions of the Alabama court's order entered July 19, 2004, and that a hearing is currently set in the Alabama court with regard to this child on October 6, 2004. This Court shall defer to the Alabama court with regard to whatever custody determination the Alabama court makes upon its hearing regarding the child.

On October 29, 2004, Robbie Whitehead filed a copy of the order of the Juvenile Court of Lauderdale County of October 13, 2004, with the Juvenile Court of Davidson County together with a Notice of Filing which provided:

Comes now Robbie Whitehead, by and through counsel, and gives notice of the filing of the order of the Juvenile Court for Lauderdale County, Alabama, entered October 13, 2004. The aforementioned order set a hearing regarding the minor child, [B.N.W.], in the Alabama court for November 23, 2004, at 11:00 a.m. Also filed herewith is a copy of the order of service and return of the Alabama court reflecting that Debra Whitehead, the mother of the minor child, was served with process in the

-17-

Alabama custody proceeding on October 20, 2004, at Restoration Ranch in Tuscumbia, Colbert County, Alabama, where she has been since she entered treatment shortly after the removal of the minor child from the mother by the Tennessee Department of Children's Services in June 2004.

William Spann and Debra Whitehead filed timely Notices of Appeal.[4]

The first of many jurisdictional problems addressing the Court is the problem of our own jurisdiction given the present posture of this case. When reserving jurisdiction over the DCS dependent and neglected child petition in its Final Order entered October 18, 2004, the Juvenile Court made no designation of finality as to all other issues and parties under Tennessee Rules of Civil Procedure 54.02. Whatever problems there are in this case as to finality, considerations of judicial economy and the avoiding of piecemeal appeals mandate suspension of the final judgment requirement in this case. Decision on the appeal at bar may well, under the facts of this case, render moot the still pending dependency and neglect proceedings. We will, therefore, suspend the finality requirements of Tennessee Rules of Civil Procedure 54.02 and proceed to a consideration of the merits of this appeal. *Bayberry Assoc. v. Jones*, 783 S.W.2d 553, 559 (Tenn.1990); *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *3 (Tenn.Ct.App. Feb. 26, 2003).

This appeal involves the Tennessee version of the Uniform Child Custody and Jurisdiction and Enforcement Act (Tenn.Code Ann. § 36-6-201 *et seq.*). References in the Tennessee Act to "this part" refers to the entirety of the Uniform Statute appearing from Tennessee Code Annotated 36-6-201 through Tennessee Code Annotated 36-6-243. (*See* Tenn.Code Ann. § 36-6-201.)

The only two states involved in the litigation at bar are Tennessee and Alabama, with Alabama also having adopted, effective January 1, 2000, the Uniform Child Custody Jurisdiction and Enforcement Act (Code of Alabama section 30-3B-101 *et seq.*).

An extensive and informative discussion of the Uniform Act appears in an annotation entitled "Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act" in 100 A.L.R. 5th, at 1-65. The Tennessee version of the Uniform Act was discussed at length by this Court in *Cliburn v. Bergeron*, Nos. M2002-01386-COA-R3-CV, M2001-03157-COA-R3-CV, 2002 WL 31890868 (Tenn.Ct.App. Dec. 31, 2002) (no perm. app. filed).

Basically, under the Uniform Act, there are four (4) types of initial child custody jurisdiction, those being home state jurisdiction, significant connection jurisdiction, jurisdiction by reason of

---

[4]The Tennessee Department of Children's Services has not appealed, and on May 11, 2005, DCS filed a Notice with this Court that the issues raised on appeal did not directly involve the Department of Children's Services and that no brief or argument would be presented by the Department. The Final Order of the Juvenile Court did not adjudicate the dependent and neglected child issues presented by the Department of Children's Services, but instead allowed the Department to proceed on its petition in the Juvenile Court.

declination of jurisdiction, and default jurisdiction. Tenn.Code Ann. § 36-6-216.[5] Since we have determined that Tennessee Code Annotated sections 36-6-221 and 36-6-222 are outcome determinative of all jurisdictional questions, no extensive discussion of other provisions of the Uniform Act is necessary. We do not have in this case competition between states as to which state has jurisdiction, but rather agreement of both states that Alabama has jurisdiction. The Juvenile Court of Davidson County has deferred to the jurisdiction of the Juvenile Court of Lauderdale County, Alabama, where extensive proceedings occurred predating the April 14, 2004, Petition filed in Tennessee. Appellate review of the action of a trial court in declining to exercise jurisdiction under Tennessee Code Annotated section 36-6-222 (or Alabama section 30-3B-207) is limited to a determination of whether or not the trial court abused its discretion. *Shanoski v. Miller*, 780 A.2d 275, 279 (Me.2001).

Tennessee Code Annotated section 36-6-222 provides:

**36-6-222. Declining jurisdiction — Inconvenient forum. —** (a) A court of this state which has jurisdiction under this part to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's motion, or request of another court.

(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) The length of time the child has resided outside this state;

(2) The distance between the court in this state and the court in the state that would assume jurisdiction;

(3) The relative financial circumstances of the parties;

(4) Any agreement of the parties as to which state should assume jurisdiction;

(5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(6) The ability of the court of each state to decide the issue expeditiously and the procedure necessary to present the evidence;

(7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

---

[5] Added to these bases is Temporary Emergency Jurisdiction provided by Tenn.Code Ann. § 36-6-219.

(d) A court of this state may decline to exercise its jurisdiction under this part if a child-custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.

Tenn.Code Ann. § 36-6-222.

The right of a trial court to decline jurisdiction includes all forms of jurisdiction authorized by Tennessee Code Annotated section 36-6-216 and "Emergency temporary jurisdiction" under Tennessee Code Annotated section 36-6-219, since all such bases of jurisdiction exist under "this part."

Addressing this same question, the Supreme Court of Maine held:

The question before us is not whether the North Carolina court committed error. Our concern is whether the Maine District Court exceeded the bounds of its discretion in declining to exercise jurisdiction. We review a decision to decline to exercise jurisdiction for reason of inconvenient forum for abuse of discretion. *Alley v. Parker*, 1998 ME 33, ¶ 6, 707 A.2d 77, 79.

The UCCJEA provides specific factors to be considered by a court with continuing exclusive jurisdiction in determining whether it is the appropriate forum or whether another state is the more appropriate forum. 19-A M.R.S.A. § 1751(2). The first listed factor is whether domestic violence has occurred and which state can best protect the parties and the child. *Id*. § 1751(2)(A). There was no evidence of domestic violence in this case, and thus, this factor has no bearing on the matter.

The second factor is "[t]he length of time the child has resided outside [Maine]." *Id.* § 1751(2)(B). The court noted that the child had lived in North Carolina since she was less than a year old and had spent approximately 80% of her time in North Carolina.

The court did not discuss the third factor, which is the distance between the two states. *Id.* § 1751(2)(C). Although Shanoski had pointed out to the court that the distance is 900 miles, he did not raise any issue about the distance except for the expense of travel, and he has made no argument in this Court concerning this factor.

Expense is a concern in the fourth factor which is the parties' "relative financial circumstances." *Id.* § 1751(2)(D). The court did not discuss this factor, possibly because there was so little evidence on it. The evidence before the court was that Shanoski is an attorney with a substantial education debt. Neither his verified opposition nor Miller's affidavit gave Shanoski's income. Miller's income was approximately $25,000 annually, and her parents, who are described as wealthy by Shanoski, have assisted her with litigation costs. Before this Court, Shanoski does

not make any argument that the financial facts demonstrate that Maine should exercise jurisdiction.

The fifth factor is whether there is "[a]ny agreement of the parties as to which state should assume jurisdiction." *Id.* § 1751(2)(E). The 1997 referee's report stated that the parties had agreed that Maine had jurisdiction over the divorce and the ordered reference for the unresolved 1998 visitation. On its face, however, that agreement is limited to the divorce itself and the unresolved 1998 visitation. It was not an agreement that Maine would exercise jurisdiction in all future disputes, nor was it an agreement to arbitrate all future disputes. The second referee's report contains no agreement regarding jurisdiction or arbitration; the parties were *ordered* to arbitrate future disputes.

The sixth factor deals with the "nature and location of the evidence" for the custody dispute. *Id.* § 1751(2)(F). The court found that more information regarding the child was in North Carolina than Maine. The court stated that "care providers, teachers, and others who have had significant and longstanding contact" with the child are in North Carolina. Because the dispute between the parties centered on the disruption that visitation may have on the child's education, it was particularly appropriate that the court consider that teachers' testimony may have a bearing on the outcome. The court did not ignore the fact that Maine witnesses may also have testimony as it suggested that the Maine witnesses could testify by deposition or telephonically.

The next factor concerns the respective courts' abilities to decide the case expeditiously. *Id.* § 1751(2)(G). Shanoski argues that Maine can act more fairly and expeditiously than North Carolina because Maine allows parties and witnesses to appear and testify by telephone. He states that the North Carolina court would not let him appear by telephone for the oral argument on his motion to dismiss. Shanoski, however, was acting pro se in that matter. There was no evidence that North Carolina would not allow Maine witnesses to testify telephonically. The Maine court found that more witnesses who have significant information about the child and her circumstances are located in North Carolina. This fact implies that it would be more expeditious for the North Carolina court to schedule a hearing.

The final factor is the familiarity of each court with the facts and issues. *Id.* § 1751(2)(H). Although the Maine court did not discuss this factor, the voluminous file indicates that the Maine court has been presented with more of the issues than the North Carolina courts.

Shanoski also makes a general argument, regarding all of the factors, that the court should have addressed each factor, made specific findings of fact on each factor, and concluded which factors weighed in favor of or against declining to exercise jurisdiction. The inconvenient forum statute, however, does not expressly

require the court to make findings of fact and conclusions of law for each factor. The statutory requirement is for a court to consider the factors. *Id.* § 1751(2). We have not, by case law, required trial courts to specifically enumerate their findings on each factor in those situations in which there are statutory factors to be considered. *See MacCormick v. MacCormick*, 513 A.2d 266, 268 (Me.1986) (stating trial court not required to give detailed findings on each statutory factor concerning best interests of children). We require trial courts to make findings that are sufficient to inform the parties of the court's reasoning and sufficient for effective appellate review. *Dargie*, 2001 ME 127, ¶ 2, 778 A.2d at 353.

In this case, the court found that the child had spent 80% of her life in North Carolina and that her teachers, care providers, and others who had spent significant time with her were located in North Carolina. These facts related to three of the statutory factors: (1) the length of time the child has lived outside Maine, 19-A M.R.S.A. § 1751(2)(B); (2) the nature and location of the evidence, *id.* § 1751(2)(F); and (3) the ability of each court to decide the case expeditiously, *id.* § 1751(2)(G). We are not persuaded that the court ignored evidence regarding other factors or that the court gave improper weight to the factors it discussed. The court's thoughtful discussion was sufficient to inform the parties of the basis of its decision and sufficient for us to perform our function of appellate review.

The Maine court determined that because of the length of time that the child had lived in North Carolina and because more of the evidence relating to the child was in North Carolina, Maine was an inconvenient forum and North Carolina was the more appropriate forum. We cannot conclude that the Maine court exceeded or abused its discretion in making that determination.

*Shanoski*, 780 A.2d at 279-81.

The superior court of Connecticut in a New York-Connecticut jurisdictional context addressed what appeared to be mutual deference between courts. In *Lord v. Lord*, No. FA970348367S, 2001 WL 1202614 (Conn. Super. Ct. Sept. 14, 2001), a couple born and raised in New York and married in that state moved to Connecticut in 1996 where their child was born. Nine months after the birth of the child, the mother moved back to New York with the child. In a Connecticut divorce action of July 29, 1998, the mother received legal custody of the child pursuant to the court-approved agreement of the parties. In March of 2000 the mother filed a New York action seeking to modify the Connecticut decree with father asserting that Connecticut had continuing jurisdiction under the Uniform Child Custody Jurisdiction Act. (Predecessor to the Uniform Child Custody Jurisdiction and Enforcement Act.) The New York court declined to exercise jurisdiction recognizing Connecticut continuing jurisdiction over matters of custody but dismissing the New York petition without prejudice observing:

If the Connecticut declines jurisdiction and defers to the courts of New York, this Court will entertain an application by either party for modification of the custody

and/or visitation provisions of the divorce judgment.  Absent such a specific determination by the Connecticut court, this Court declines to proceed therein.

*Lord*, 2001 WL 1202614, at \*2.

In acknowledging that the Connecticut court had continuing jurisdiction of the custody case but declining to exercise such jurisdiction, the Connecticut court held:

> Section 13 of the UCCJEA includes an express "continuing exclusive jurisdiction" rule which states: (a) Except as otherwise provided in section 15 of this Act, a court of this state which has made a child custody determination pursuant to sections 12 to 14, inclusive, of this act, has exclusive, continuing jurisdiction over the determination until: (1) a court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state; or (2) a court of this state determines that (A) this state is not the home state of child, (B) a parent or a person acting as a parent continues to reside in this state but the child no longer has a significant relationship with such parent or person, and substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.

> Under Section 13, this state is not deprived of continuing, exclusive jurisdiction under (1) above since the plaintiff continues to reside here.  Nor is it deprived of such jurisdiction under (2) above.  Clearly, New York has become Bridgette's home state.  It cannot, however, be said her relationship with the plaintiff, who continues to reside here, is no longer significant although this court finds substantial evidence is no longer available here concerning her care, protection, training and personal relationships.  Her family is almost exclusively in New York as are her school, her treating doctor(s), her neighbors, her friends, and her medical and education records.  Bridgett's only present connection with Connecticut is that her father resides here.  Thus, New York has the maximum contact concerning the child's present and future care and protection.  While there is some visitation in this state on a monthly basis, most visitation is scheduled to take place in New York and the plaintiff-father does not play an active role in Bridgete's daily life so as to establish a significant connection to Connecticut or provide substantial evidence here.  Bridgette has no childhood friends here, knows none of her dad's neighbors, does not attend school here, is not medically treated here, and is not enrolled in any organized activities here.  Essentially, her only ties to this state are the occurrence of her birth, a short residency, and her father's continued residency.

> While the defendant's argument this court lacks continuing jurisdiction is attenuated, more persuasive is her second argument that this court should decline to exercise jurisdiction based upon the "inconvenient forum" provision of the UCCJEA.  Section 18(a) provides, "A court of this state which has jurisdiction under this Act to make a child custody determination may decline to exercise its jurisdiction at any

time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Section 18(b) provides:

> In determining whether a court of this state is an inconvenient forum and that it is more appropriate for a court of another state to exercise jurisdiction, the court shall allow the parties to submit information and shall consider all relevant factors including: (1) whether family violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (2) the length of time the child has resided outside this state; (3) the distance between the court in this state and the court in the state that would assume jurisdiction; (4) the relative financial circumstances of the parties; (5) any agreement of the parties as to which state would assume jurisdiction; (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child; (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

> . . .

A consideration of these factors dictates a finding Connecticut should decline jurisdiction under these provisions. While this case has no history of family violence and despite the Agreement's provision this state will retain jurisdiction, the child has resided outside the state since August of 1997 and was a resident of Connecticut for a mere nine (9) months; the distance between this court and the family court in Suffolk County, New York, is approximately ninety (90) miles-not sufficient to make a meaningful difference. Although the plaintiff had earlier earned substantially more income than did the defendant, he now claims to earn only slightly more than does the defendant in her $47,000 a year teaching position; the parties' financial positions are therefore irrelevant. The couple's agreement Connecticut would retain jurisdiction is also irrelevant - particularly since this court has subject matter jurisdiction. Virtually all of the evidence-both by testimony and by way of documentation-resides in New York. While highly unlikely this not-yet five-year-old child's testimony will be required, her location in New York suggests any court ordered custody/visitation evaluation or mediation should occur there. Clearly, the court in both states is equally competent to decide the pending issues. While this court presently has greater familiarity with the facts and issues, transcripts, memoranda, and the recommendations of family services in New York will provide sufficient guidance for the New York court's eventual orders. Further, this court remains available for any communication that court might find informative. Finally, New York has expressed a willingness to assume jurisdiction if this state declines to exercise the same.

This court finds there is subject matter jurisdiction but declines to exercise the same on the ground of inconvenient forum. Because the UCCJA provision for dismissal of the Connecticut action when this state determines it is an inconvenient forum (Connecticut General Statutes § 46b-97(e)) was not carried over into the new legislation, the defendant's motion to dismiss is denied. Her motion to decline jurisdiction is granted.

*Lord*, 2001 WL 1202614, at *2-4.

Very educational decisions relative to the UCCJEA are *Welch-Doden v. Roberts*, 42 P.3d 1166 (Ariz.Ct.App.2002) and *S.W. v. Duncan*, 24 P.3d 846 (Okla.2001). These cases, however, do not address the declining of jurisdiction under the UCCJEA, but rather a contest among jurisdictions as to which court in fact has jurisdiction. These cases generally involve the preference for "home state" jurisdiction under the UCCJEA as to "initial" custody jurisdiction but also recognize as to modification of an existing custody order, "home state" jurisdiction status does not override continuing jurisdiction in the absence of a determination by the "continuing jurisdiction" court that it no longer has exclusive continuing jurisdiction or that another court would be a more convenient forum. *S.W.*, 24 P.3d at 856-57.

Another carefully reasoned decision involving "home state" jurisdiction and an unsuccessful effort by one "home state" jurisdiction to bestow "home state" jurisdiction on another state is *In re McCoy*, 52 S.W.3d 297 (Tex.Ct.App.2001). In that case, the home state of the child was the foreign country Qatar, which sought by court order to defer jurisdiction to Texas at a time when Arkansas had become the home state of the child. Explaining its decision that the Texas court had no jurisdiction, the Court of Appeals of Texas held:

Texas simply no longer had superior jurisdiction to Arkansas at the time Michael filed his suit in Texas. If Michael had filed suit in Texas while Qatar still maintained its status as "home state," Qatar's deferral to the Texas court would have made Texas the state with a superior right to jurisdiction. At that time, Arkansas had not become the home state, and Qatar was clearly the home state. However, because Michael waited to file suit in Texas until the children had lived in Arkansas for well over six months, Arkansas achieved "home state" status during his delay.

*In re McCoy*, 52 S.W.3d at 306.

With this insight into persuasive authority from sister jurisdictions, we turn to the case at bar.

While Tennessee might claim "home state" status, under the facts of this case, it has not done so. The only basis on which Tennessee has actually taken jurisdiction is as a result of the DCS petition charging that B.N.W. was a dependent and neglected child. Indeed, Juvenile Referee Alan Calhoun made it clear in his August 17, 2004, order that "This court is exercising temporary emergency jurisdiction of this matter pursuant to section 36-6-219 of Tennessee Code Annotated; however, the extent of its jurisdiction remains disputed."

The only relevant pleadings before the Court are (1) the petition by Debra Whitehead to domesticate the judgment of the Alabama Juvenile Court of February 23, 2004, which petition has never been adjudicated and the order never domesticated; (2) the answer of Robbie Whitehead challenging the jurisdiction of the Juvenile Court of Davidson County, Tennessee, to either domesticate the Alabama order or take any other action in this case; (3) the petition of DCS for emergency consideration of the dependent and neglected child allegations as to B.N.W.; and (4) the oral petition of William Spann recognized in the temporary custody order whereby he sought such custody under the DCS petition.

Because the record discloses that proceedings as to custody of B.N.W. had long been ongoing before the Juvenile Court of Lauderdale County, Alabama, consideration has to be first given to Tennessee Code Annotated § 36-6-221. This statute provides:

> **36-6-221. Proceedings already commenced in another state.** — (a) Except as otherwise provided in § 36-6-219 [temporary emergency jurisdiction], a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.
>
> (b) Except as otherwise provided in § 36-6-219, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to § 36-6-224. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.
>
> (c) In a proceeding to modify a child custody determination, a court of this state shall determine whether a proceeding to enforce the determination has been commenced in another state. If a proceeding to enforce a child custody determination has been commenced in another state, the court may:
>
> (1) Stay the proceeding for modification pending the entry of an order of a court of the other state enforcing, staying, denying, or dismissing the proceeding for enforcement;
>
> (2) Enjoin the parties from continuing with the proceeding for enforcement; or
>
> (3) Proceed with the modification under conditions it considers appropriate.

Tenn. Code Ann. § 36-6-221.

At least at the theoretical level, the UCCJEA was intended to resolve problems existing under the UCCJA concerning simultaneous proceedings. As explained in the comments to the official text under Tennessee Code Annotated section 36-6-221:[6]

> This section represents the remnants of the simultaneous proceedings provisions of the UCCJA § 6. The problem of simultaneous proceedings is no longer a significant issue. Most of the problems have been resolved by the prioritization of home state jurisdiction under section 17 [§ 36-6-216]; the exclusive, continuing jurisdiction provisions of section 18 [§ 36-6-217]; and the prohibitions on modification of section 19 [§ 36-6-218]. If there is a home state, there can be no exercise of significant connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings. If there is a state of exclusive, continuing jurisdiction, there cannot be another state with concurrent jurisdiction and, therefore, no simultaneous proceedings. Of course, the home state, as well as the state with exclusive, continuing jurisdiction, could defer to another state under section 23 [§ 36-6-222]. However, that decision is left entirely to the home state or the state with exclusive, continuing jurisdiction.

Tenn. Code Ann. § 36-6-221 (official cmts).

So it appears that at the time of the final hearing before the Davidson County Juvenile Court concerning jurisdiction it was apparent that:

1. If the court found, regardless of home state status, that Alabama had continuous and exclusive jurisdiction of the custody issues, then Tennessee must defer to the Alabama court under Tennessee Code Annotated section 36-6-221.
2. If the Davidson County court was an inconvenient forum under the circumstances and the court of Alabama was a more appropriate forum, then regardless of the type of jurisdiction that the Tennessee court was or could be exercising, the Tennessee court in its discretion could decline to exercise jurisdiction and defer to the Alabama courts under the provisions of Tennessee Code Annotated section 36-6-222.

At the time of the final hearing of August 10, 2004, which resulted in the final judgment of the Juvenile Court of Davidson County on October 18, 2004, the following is undisputed in the record:

1. Ongoing custody proceedings as to B.N.W. had existed in Alabama for three (3) years prior to the April 14, 2004, petition being filed in Davidson County.
2. The child, B.N.W., was in Alabama and in the custody of Robbie Whitehead under the July 19, 2004, order of the Alabama court.

---

[6] These comments to the official text are not part of the legislative Act, but are evidence of legislative intent. *See* Tenn. Code Ann. § 36-6-203.

3. The mother, Debra Whitehead, was physically located in Alabama in a drug rehab center.

4. Maternal grandfather, William Spann, had never been a party to the Alabama proceedings, and his only claim to custody of B.N.W. was based upon the order of the Tennessee court following the DCS petition when that court was exercising temporary emergency jurisdiction pursuant to Tennessee Code Annotated section 36-6-219.

5. The Alabama court had not determined that it no longer had continuing exclusive jurisdiction under Tennessee Code Annotated section 36-6-218(1).

6. Neither a court of Tennessee nor a court of Alabama had determined that the child, the child's parents or any person acting as a parent did not presently reside in the state of Alabama. *See* Tenn. Code Ann. § 36-6-218(2).

While we are hampered by the fact that the "Order Confirming Referee" entered October 18, 2004, following the hearing of August 10, 2004, does not specifically delineate the basis upon which Judge Green declined to exercise jurisdiction and deferred to the jurisdiction of the Juvenile Court of Lauderdale County, Alabama, the findings made by the Davidson County Juvenile Court leave no doubt that Alabama has continuing exclusive jurisdiction and is the more convenient and appropriate forum to hear the custody issues in this case. The Order provides:

2. The Honorable Betty Adams Green, Judge of the Juvenile Court for Davidson County, Tennessee, has spoken by telephone with the Honorable Larry Mack Smith, Judge of the Juvenile Court for Lauderdale County, Alabama, pursuant to the provisions of Uniform Child Custody Jurisdiction and Enforcement Act. The judges agreed that the order of the Alabama court entered February 24, 2004, provided that all previous orders of that court remained in full force and effect, including the provisions of the Alabama court's order entered August 19, 2003, which stated, "The Court reserves jurisdiction to continue monitoring progress in this cause of action." The aforementioned Alabama order also stated, "This Court shall retain jurisdiction over this matter and shall have review hearing on the 17th day of February, 2004, at 11:30 a.m. before the undersigned." Judge Smith stated that he reserved jurisdiction over this matter in his Court due to his concern that the mother of the minor child, Debra Whitehead (hereinafter "mother") would relapse into drug abuse, which was what led to the removal of her child by the Alabama court as early as 2001. The judges of both courts agreed that the child has extensive ties to the State of Alabama inasmuch as she resided from her birth to 2003 at the residence of her paternal grandmother, Robbie Whitehead (hereinafter "grandmother"), in Alabama and continued to visit her grandmother in Alabama on alternating weekends after the mother moved with the child to Tennessee in 2003. The mother and the child are represented in the Alabama by counsel and a guardian ad litem, respectively, and the mother is currently in treatment for her drug abuse in Alabama according to her Tennessee counsel.

3.	This court declines to exercise jurisdiction over any custody determination in this matter and hereby defers such issues to the Juvenile Court for Lauderdale County, Alabama; however, the Tennessee Department of Children's Services (hereinafter "Department") may proceed on its petition alleging that the mother has caused the minor child to be a dependent and neglected child within the definition set forth at section 37-1-102(b)(12) of the Tennessee Code Annotated. This Court shall transfer any further proceedings involving the custody determination regarding this child to the Juvenile Court for Lauderdale County, Alabama.

From our review of the record, it is clear that Alabama has continuing exclusive jurisdiction and is the most convenient and adequate forum to determine these issues concerning the custody of B.N.W. The Juvenile Court of Davidson did not abuse its discretion in declining to exercise jurisdiction and in deferring to the jurisdiction of the Juvenile Court of Lauderdale County, Alabama.

The decision of the trial court to decline to exercise jurisdiction and to defer to Alabama is mandated by Tennessee Code Annotated section 36-6-221 because Alabama has exclusive continuing jurisdiction under Tennessee Code Annotated section 36-6-217. The record before this Court clearly establishes that Alabama has such exclusive continuing jurisdiction.

Appellants assert that Robbie Whitehead is not a "person acting as a parent" within the meaning of the UCCJEA. Tennessee Code Annotated section 36-6-205(13) provides:

> 'Person acting as a parent' means a person other than a parent who:
>     (A) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and
>     (B) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state;

Tenn. Code Ann. § 36-6-205(13).

In order for appellants to prevail it would be necessary to construe "commencement of a child custody proceeding" to mean the proceeding instituted by Debbie Whitehead in Davidson County on April 14, 2004. Tennessee Code Annotated section 36-6-205(4) provides, "'Child custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue."

That same statute provides, "'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." Tenn. Code Ann. § 36-6-205(4).

Nothing in the UCCJEA compels the conclusion that "commencement of a child custody proceeding" means the commencement of the Tennessee proceeding in this case. This is particularly

true since Alabama clearly has continuing jurisdiction under Tennessee Code Annotated section 36-6-217 following the "commencement of a child custody proceeding" in the state of Alabama. The statutory construction sought by the appellants would mean that the court with exclusive continuing jurisdiction, which had specifically reserved such continuing jurisdiction, had in the same order in which such jurisdiction had been reserved, sewn the seed for the destruction of its own jurisdiction by the mere lapse of time. Such a construction would frustrate the purposes of UCCJEA. Tennessee Code Annotated section 36-6-202 provides:

> Construction and purpose. This part shall be liberally construed and applied to promote its underlying purposes and policies. This part should be construed according to its purposes, which are to:
> (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
> (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
> (4) Deter abductions of children;
> (5) Avoid relitigation of custody decisions of other states in this state; and
> (6) Facilitate the enforcement of custody decrees of other states.

Tenn. Code Ann. § 36-6-202.

In cases involving exclusive continuing jurisdiction under Tennessee Code Annotated section 36-6-217, it is apparent that the "person acting as a parent" means a person acting as a parent at the time the original action in the continuing jurisdiction state was filed. The official comments to Tennessee Code Annotated section 36-6-217 provide:

> The continuing jurisdiction of the original decree state is exclusive. It continues until one (1) of two (2) events occurs:
> 1. If a parent or a person acting as a parent remains in the original decree state, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree state and there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that state.
> In other words, even if the child has acquired a new home state, the original decree state retains exclusive, continuing

jurisdiction, so long as the general requisites of the substantial connection jurisdiction provisions are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist. The use of the phrase "a court of this state" under subsection (a)(1) makes it clear that the original decree state is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree state stating that it no longer has jurisdiction.

2. Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree state.

Tenn. Code Ann. § 36-6-217 (official cmts).

At the time of the commencement of the child custody proceeding in Alabama, Robbie Whitehead was a "person acting as a parent" with the father of B.N.W. being incarcerated and her mother being addicted to cocaine.

It is well to observe that Juvenile Referee Alan Calhoun in his August 30, 2004 order specifically found that Robbie Whitehead was a "person acting as a parent" under the UCCJEA. This finding was approved and incorporated into the final order of Juvenile Judge Green entered October 18, 2004. Having no transcript or statement of the evidence for review we have no means of reviewing the factual basis on which this determination was made and must conclusively presume that the testimonial record would support the action of the trial judge. *See Sherrod*, 849 S.W.2d at 783.

Appellants further complain that the trial court erred in not making an appropriate record of its communications with the juvenile court of Lauderdale County, Alabama as required by Tennessee Code Annotated section 36-6-213(d) and (e). This issue is raised for the first time on appeal as the record before the Court does not disclose that appellants objected to such matters in the trial court or otherwise brought to the attention of the trial judge the inadequacy of the record relative to the communication between judges. They may not be heard now to complain. *Pearman v. Pearman*, 781 S.W.2d 585, 587-88 (Tenn. Ct. App. 1989); *Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991).

Even if deferring to Alabama were not mandated under Tennessee Code Annotated section 36-6-221 the trial court cannot be held to have abused its discretion under Tennessee Code Annotated section 36-6-222 in finding that Alabama was the most convenient and adequate forum for determination of these custody issues.

The disposition made of this case makes it unnecessary to discuss whether or not Debra Whitehead is judicially estopped to attack the continuing jurisdiction of the Alabama court when her initial and only relevant pleading in the case seeks to domesticate and enforce the judgment of the Alabama court. *See Marcus v. Marcus*, 993 S.W.2d 596, 601-03 (Tenn. 1999).

The judgment of the trial court is in all respects affirmed, and the costs are assessed to the appellants. The case is remanded for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE