NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

COURTNEY ANN GREENE, *Petitioner/Appellant*,

*v.*

CHRISTOPHER R. SAWICKI II, *Respondent/Appellee*.

No. 1 CA-CV 17-0007 FC
FILED 6-26-2018

Appeal from the Superior Court in Yavapai County
No. P1300DO20070380
The Honorable Joseph P. Goldstein, Judge *Pro Tempore*

**REVERSED**

COUNSEL

Courtney Ann Greene
*Petitioner/Appellant*

Miller Shaw PLLC, Prescott
By Bryan C. Shaw
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Jon W. Thompson and Judge James P. Beene joined.

---

**S W A N N**, Judge:

**¶1**      This is an appeal from an Arizona court's order declining to exercise its exclusive jurisdiction in a family-law case based on the conclusion that Illinois provided a more appropriate forum. Under A.R.S. § 25-1037, which sets forth the test for inconvenient forum under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), the court was required to consider domestic violence. But though the court was presented with disputed allegations of domestic violence, the court took no evidence to resolve the dispute. We therefore reverse.

### FACTS AND PROCEDURAL HISTORY

**¶2**      Courtney Ann Greene ("Mother") and Christopher Randall Sawicki II ("Father") are the parents of two minor children.

**¶3**      In 2007, Mother filed a petition in Arizona (where both parents then lived) to determine custody, parenting time, and child support. In 2008, the court approved the parties' parenting plan, which purported to establish joint custody[1] and substantially equal parenting time. In the years that followed, Mother and Father engaged in frequent litigation in the Arizona case. They also moved several times, sometimes sharing a residence.

**¶4**      Mother first moved from Arizona with the children in late 2010, ultimately settling in Illinois. Father then moved to Illinois, and for a period the parties lived there together. In 2011, Mother and Father stipulated to joint custody and a parenting-time schedule. The agreement provided that neither parent would move the children more than fifty miles from their residence absent court order or written consent of the other

---

[1]    The parenting plan specified that Mother had final decision-making authority after consultation with Father. In effect, therefore, the parenting plan established sole legal decision-making. *Nicaise v. Sundaram*, 785 Ariz. Adv. Rep. 12, 16, ¶ 18 (App. March 1, 2018).

parent. But in early 2012, Mother unilaterally relocated to Arizona with the children, and Father sought the Arizona court's intervention. In late 2012, the court found that both parties had perpetrated domestic violence on each other, reaffirmed joint legal custody, ordered Mother to return the children to Illinois, and set forth a parenting-time schedule. Several months later, the court modified its ruling to specify that Mother's obligation to return the children to Illinois was contingent on Father remaining current on child-support payments for at least four months.

¶5            In early 2014, the children were still in Arizona when Mother filed a petition to permit relocation. The court denied the relocation petition and reaffirmed joint legal decision-making in late 2015. In early 2016, Mother and the children returned to Illinois and moved in with Father. A few months later, Mother returned to Arizona without the children.

¶6            Father thereafter asked the court to stop his child-support obligation, and Mother petitioned to enforce arrearages and medical-insurance coverage. By late 2016, those issues were resolved. But while they were pending, several events occurred.

¶7            First, in August 2016, the court granted Mother's request that her address be protected from disclosure based on threats and harassment by Father; relatedly, in October 2016, the court granted Mother's ex parte petition for an order of protection against Father. The court also ordered that Mother would have a week of parenting time in Arizona in late August, but Father did not send the children, citing Mother's noncompliance with the court's order that she provide an itinerary for the children's return travel.

¶8            Also in August, Father filed an action in an Illinois court to modify parental responsibilities, both temporarily and on a permanent basis. The Arizona court discussed the Illinois proceeding with the parties at a September hearing. A month later, the court ordered Father to file copies of the petition and court's temporary orders filed in Illinois. The court also indicated that it would contact the Illinois judge to discuss the situation. Father promptly filed copies of the Illinois documents. In late October, the court set a status conference for November 2.

¶9            Mother appeared in person at the November 2 status conference, and Father and the Illinois judge appeared telephonically. Neither Mother nor Father was sworn, and the court took no evidence.

¶10            Mother acknowledged that she had taken the children to Illinois in late January, that she returned to Arizona without them in April,

and that there was no claim for relief currently pending in the Arizona court. She stated, however, that Father had lied to the court and subjected her to domestic violence. She stated that in addition to the order of protection, Father was being investigated on criminal charges in Arizona and had outstanding warrants for "poisoning me before our trial last year and things of that nature." She stated that she had intended to stay in Arizona only a few days when she traveled in April, but Father "kept me here" by threatening "to kill me and get me arrested and do horrible things." She stated that she was preparing a custody-modification petition, which she had "been too afraid because of the domestic violence to present" previously, and that it was almost ready to be filed. She stated that it would be financially impossible for her to meet the Illinois court's requirement for in-person appearances.

¶11        Father stated that Mother had reported him to law enforcement and child protective services, and had filed for restraining orders against him on multiple occasions; he did not admit domestic violence but instead characterized Mother's conduct as indicative of her "level of desperation." Father also stated that Mother talked to the children about the litigation, told the children that she was dying, and had absconded with the children multiple times. The court indicated during the hearing that it was checking Mother's allegation of outstanding warrants in Arizona, but the record does not reveal the outcome of the court's research.

¶12        The Illinois judge stated that the children were now Illinois residents, that any evaluations or counseling of the children would necessarily take place in Illinois, and that she was well-equipped to take over the case. The judge confirmed that "[w]e don't do telephonic hearings," but stated that she would "look into it and see if we can accommodate [Mother]."

¶13        The Arizona court concluded that under A.R.S. § 25-1037, more factors weighed in favor of permitting Illinois to exercise jurisdiction. The court denied Mother's request to summarize the factors weighing "on the side of Arizona." The court then issued a signed minute entry holding, without written findings, that "[t]he courts agree that jurisdiction in this matter is proper in Illinois."

¶14        Mother appeals.

**APPELLATE JURISDICTION**

¶15        We have jurisdiction under A.R.S. § 12-2101(A)(3), which authorizes an appeal from "any order affecting a substantial right made in

4

any action when the order in effect determines the action and prevents judgment from which an appeal might be taken."[2]  The Arizona court's decision to decline jurisdiction effectively closed the Arizona case, depriving Mother of the right to continue to have controversies resolved in Arizona and eliminating the possibility of the Arizona court issuing appealable judgments.  *See* A.R.S. § 25-1037(C) (providing that when an Arizona court determines that another state's court is a more appropriate forum, the Arizona proceedings must be stayed, so long as a custody proceeding is promptly commenced in the other state).  We note, however, that litigants in Mother's position may obtain more meaningful relief by way of special action, because such may permit reversal of an improper jurisdictional decision before out-of-state proceedings go forward.  *See* Ariz. R.P. Spec. Act. 1(a) (providing that special-action jurisdiction is appropriate where there is no equally plain, speedy, and adequate remedy by appeal).

## DISCUSSION

**¶16**        When an Arizona court makes an initial custody determination, the court retains "exclusive, continuing jurisdiction over the determination" until either (1) an Arizona court "determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships," or (2) an Arizona court or the court of another state "determines that the child, the child's parents and any person acting as a parent do not presently reside in this state."  A.R.S. § 25-1032(A).  Applying that standard here, Arizona retained exclusive jurisdiction over all custody disputes: an Arizona court made the initial custody determination, and Mother's Arizona residency prevented application of either exception to Arizona's continuing jurisdiction. Therefore, the only avenue for a transfer of jurisdiction was an inconvenient-forum determination under A.R.S. § 25-1037.  We review the court's decision under § 25-1037 for an abuse of discretion.  *Tiscornia v. Tiscornia*, 154 Ariz. 376, 377 (App. 1987).

---

[2]        Even if § 12-2101(A)(3) did not apply, we would exercise our discretion to treat this appeal — which presents a narrow, fully briefed issue related to children's best interests — as a special action.  *See State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235, 236 (App. 1995) (treating appeal as special action where case involved fully briefed, discrete issue of first impression regarding child support).

¶17        Section 25-1037(A) provides that "[a] court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." *See also Melgar v. Campo*, 215 Ariz. 605, 607, ¶ 11 (App. 2007) (holding that decision to relinquish exclusive, continuing jurisdiction generally belongs to court holding such). Under § 25-1037(B), in making the determination the court "shall allow the parties to submit information and shall consider all relevant factors including" eight enumerated factors:

> 1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.
>
> 2. The length of time the child has resided outside the state.
>
> 3. The distance between the court in this state and the court in the state that would assume jurisdiction.
>
> 4. The relative financial circumstances of the parties.
>
> 5. Any agreement of the parties as to which state should assume jurisdiction.
>
> 6. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.
>
> 7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.
>
> 8. The familiarity of the court of each state with the facts and issues in the pending litigation.

The factor-based analysis permits the court to consider children's best interests. *Welch-Doden v. Roberts*, 202 Ariz. 201, 210–11, ¶ 43 (App. 2002). It also permits the court to consider the interests of the parties, especially when one has been the victim of domestic violence perpetrated by the other. *See* UCCJEA § 207, cmt. (explaining substantively identical provision of uniform act and its regard for "domestic violence and other matters affecting the health and safety of the parties"); *Stoneman v. Drollinger*, 64 P.3d 997, 1002, ¶ 26 (Mont. 2003) ("While th[e domestic-violence] factor alone is not dispositive under [Montana's version of the UCCJEA's

inconvenient-forum provision], we urge district courts to give priority to the safety of victims of domestic violence when considering jurisdictional issues under the UCCJEA.").

¶18        When presented with a § 25-1037 question (which may be raised by a party or a court, § 25-1037(A)), "[c]ommunication between courts is . . . strongly suggested."    UCCJEA § 110, cmt. (explaining substantially identical provisions of uniform act).  "The court may allow the parties to participate in the communication.  If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal argument before a decision on jurisdiction is made." A.R.S. § 25-1010(B).  The parties' participation "may amount to a hearing if there is an opportunity to present facts and jurisdictional arguments." UCCJEA § 110, cmt.  But "absent such an opportunity, the participation of the parties should not [ ] be considered a substitute for a hearing and the parties must be given an opportunity to fairly and fully present facts and arguments on the jurisdictional issue before a determination is made.  This may be done through a hearing or, if appropriate, by affidavit or memorandum."  *Id.*  Such procedures ensure that the parties are afforded due process.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'").  And when the parties dispute relevant facts, the dispute must necessarily be resolved through an evidentiary hearing.  *Cf. Christopher K. v. Markaa S.*, 233 Ariz. 297, 302, ¶ 23 (App. 2013) (holding, in non-UCCJEA case involving domestic-violence and child-abuse allegations, that "[i]t is not possible to make [ ] determinations adequately without testimony from witnesses with firsthand knowledge.").

¶19        Here, the court was faced with disputed allegations of domestic violence by Father against Mother, in a case with a history of such allegations and at least one judicial finding of domestic violence.  Domestic violence is a weighty factor in the § 25-1037 analysis.  *See* A.R.S. § 25-1037(B)(1); *Stoneman*, 64 P.3d at 1002, ¶ 26.  Based on the dispute surrounding that factor alone, the court abused its discretion by failing to hold an evidentiary hearing.  An evidentiary hearing also would have allowed the court to properly consider the parties' financial circumstances and the potential burden posed by either jurisdictional decision.  *See* A.R.S. § 25-1037(B)(4).

¶20        Because the record was inadequate to justify the court's decision to decline jurisdiction, we must reverse.  We do not interfere with any orders that the Illinois court has entered.  But as of the date of this

decision, Arizona has exclusive, continuing jurisdiction consistent with the UCCJEA. Should the § 25-1037 issue be renewed, the Arizona court must ensure that the parties are given a full and fair opportunity to present facts and arguments. The court must also make findings of fact sufficient to support its decision and permit effective appellate review. *See Shanoski v. Miller*, 780 A.2d 275, 280, ¶ 25 (Me. 2001) (holding that though Maine's version of the UCCJEA's inconvenient-forum provision does not require court to specifically enumerate findings on each statutory factor, findings must be sufficient to inform parties of court's reasoning and permit effective appellate review); *see also* UCCJEA § 110, cmt. ("The court is expected to set forth the basis for its jurisdictional decision, including any court-to-court communication which may have been a factor in the decision.").

## CONCLUSION

¶21      We reverse the court's order declining to exercise jurisdiction.



AMY M. WOOD • Clerk of the Court
FILED: AA